## FOOT *against* SABIN.

Facts stated     **IN ERROR** to the Court of Common Pleas of *Franklin*
upon a record,
on the return to county.
a writ of error
to a Court of
Common Pleas, after the attestation and signatures of the Judges to the bill of exceptions, and which
are not incorporated into the bill of exceptions, not being legally before this Court, cannot be con-
sidered as ground of error.
    Where one of two partners subscribes the copartnership name to a note, as *sureties* for a third per-
son, without the authority or consent of the other partner, the latter is not bound ; and the burden
of proving the authority or consent of the other partner, lies on the creditor or holder of the note.
    Where a Court of Common Pleas refuse to nonsuit a plaintiff, on motion of the defendant, when
the evidence entirely fails to support the plaintiff's case, a writ of error lies.

The declaration in the Court below contained three counts. The first was on a promissory note alleged to have been made by *Lemuel Holmes, Abel Wilson, and William B. Foot*, in the usual form, for 450 dollars, dated *September* 10, 1816, payable in *June* after date, with interest. The second count set forth the making of a note of the same date and amount, and payable in the same manner, and as having been made by *Lemuel Holmes*, and by *Abel Wilson*, and *William B. Foot*, they, *Wilson and Foot*, then and there being purchasers and joint dealers in goods, wares, merchandize, and lumber, under the style of *Wilson and Foot*, the proper hand of *Lemuel Holmes* being thereto subscribed, and the proper name and firm of *Wilson and Foot* being also thereto subscribed, by one of the said firm, by the name and description of *Wilson and Foot*, sureties. The third count contained the several money counts.

*Holmes* and *Wilson* pleaded, jointly, *non assumpsit*. *Foot* pleaded separately, *non assumpsit*, and, secondly, in bar, that at the time of making the note in the second count mentioned, he was a partner and joint dealer in goods, wares, merchandize and timber, with *Wilson*, as alleged ; and that *Holmes*, for a long time prior thereto, was indebted to the plaintiff, *Sabin*, in the amount secured by the note, in his individual capacity, and in no wise relating to, or connected with the business of the firm ; and that *Holmes*, in his private capacity, and *Wilson* in the nnme of the firm, without authority and against the consent of *Foot*, executed and delivered to the plaintiff below, the promissory note in the second count mentioned, and for no other cause whatever. The plaintiff replied, that *Holmes* in his private capacity, and *Wilson*, in the name of the firm, *did not execute and deliver* to the plaintiff below, the said note, without the authority and against the consent of *Foot*, in manner as he had alleged in his said second plea, which he prayed might be inquired of by the country, &c.

On the trial, a bill of exceptions was taken, which stated, that the plaintiff below, to prove and maintain the issue joined, proved, by *Appleton Foot*, that the note then produced, and which is truly described in the second count of the declaration, was signed by *L. Holmes*, in his own proper

hand, and with his name, and that the names of " *Wilson &*
*Foot*, sureties," subscribed to the said note, was in the pro-
per hand-writing of the said *Abel Wilson*, and that the said
*Wilson* and *William B. Foot*, at the time of making the said
promissory note, were partners, as in the second count is
alleged, and then rested. The defendants moved for a non-
suit, on the ground that the plaintiff had not proved the au-
thority or consent of *Foot* to the making of the note.
The Court were of opinion, that the plaintiff was bound
to prove the authority or consent of *Foot*, to the making
the note, and which they decided he had already done ; and
thereupon directed the parties to proceed to the jury.
Then followed the signatures of the judges. The record
proceeded to state, that the defendants showed in evidence,
that about the time the note was given, the plaintiff stated,
that he had a demand against *Holmes* for about 500 dollars,
and wished to obtain security ; and that he, afterwards, said,
he had obtained the security of *Wilson & Foot*, for the pay-
ment of his demand. The plaintiff then showed, that du-
ring the winter, after the note was given, *Holmes* was con-
nected with *Wilson & Foot*, in collecting and making a large
quantity of boards, for the *Montreal* market ; that in the
spring and summer of 1817, *Wilson & Foot* carried the
boards to market ; and that after the note became due, he
heard a conversation between *Holmes*, and *Foot* and *Wilson*,
in which *Holmes* alleged, that when the note was given, it
was agreed, and understood by and between them, that
*Holmes* should be connected with, and aid and assist *Wilson
& Foot* in making and marketing the boards, and that the
note to the plaintiff should be satisfied out of the avails of
the boards ; and *Holmes* complained, that *Wilson & Foot*
had not paid and satisfied the plaintiff's debt, in pursuance
of that agreement. That the allegations of *Holmes* were
not denied by *Wilson* or *Foot*; but *Wilson* said, that *Holmes*
was indebted to them, *Wilson & Foot*, for goods sold, in as
large a sum as his share of the raft of boards, and which
sum *Wilson* contended, *Holmes'* share of the boards should
pay.

The jury found a verdict for the plaintiff below, on the
last issue ; and in their verdict said, that *Holmes*, in his

private capacity, and *Wilson*, in the name of the firm, did not execute and deliver to the plaintiff the said note, without the authority, and against the consent of *Foot*, as *Foot* in his second plea hath alleged, and they assessed the damages at 505 dollars and 4 cents, besides costs; on which judgment was rendered by the Court.

The case was submitted to the Court, on the record and points stated.

SPENCER, Ch. J. delivered the opinion of the Court. I cannot consider the facts spread upon the record subsequent to the attestation of the judges to the exceptions taken by the defendants below, as legally before us. We find these facts on the record, but they are placed there by the plaintiff's attorney, in making up his judgment roll, without the apparent sanction of the Court below. It is the business of a Court of errors to review the points decided in the Court below, and as to which, exceptions are taken, and not such matters of evidence as are not excepted to. When the plaintiff rested his cause, and the defendants moved for a nonsuit, he should have asked permission to introduce such further evidence as he had, before the Court expressed an opinion on the motion; or he should have had the evidence, afterwards given, incorporated into the bill of exceptions, before it was signed and sealed, if such additional evidence, in his judgment, entitled him to recover.

The plaintiff proved *Holmes'* signature to the note, and, also, that *Wilson* and *Foot* were partners, and that *Wilson* signed the name of the firm; and it appeared on the face of the note, that they signed as "sureties" to *Holmes*. Whether we apply this proof to the general issue, or to the special plea, the plaintiff has not maintained either issue. It was incumbent on him to show, that all the defendants were liable on the note, and that *Wilson* executed the note with the express assent and authority of *Foot*. In this case, it appearing that the signature of the name of the firm, by *Wilson*, was not for a partnership debt, *Wilson* could not bind his partner *Foot*. All the cases were reviewed in *Dobb* v. *Halsey*, (16 *Johns. Rep.* 38.) and the principle es-

tablished is this, that where a note is given in the name of a firm, by one of the partners, for the private debt of such partner, and known to be so by the person taking the note, the other partner is not bound, unless he has been previously consulted, and has consented to the transaction; and the burthen of the proof, that the partner, who did not sign the note, consented to be bound, is thrown on the creditor. The same principle applies with greater force, when one of the partners becomes security for another person, and attempts to bind his copartners. The creditor is aware, that he is pledging the partnership responsibility in a matter in nowise connected with the partnership business; and that is a fraud on such of the partners as do not assent expressly that the firm shall be bound. When, therefore, it appeared, from the plaintiff's own showing, that the note was signed by *Holmes*, as principal, and by *Wilson*, with the name of the firm of *Wilson & Foot*, as sureties for *Holmes*, nothing was shown to bind *Foot*, and the plaintiff failed to maintain the issue. On the motion for a nonsuit, the Court held, that the plaintiff was bound to prove the authority or consent of *Foot* to the making the note, which the Court considered he had done. There was no proof of any authority or consent of *Foot*, except the proof of the signature of *Wilson*, of the name of the firm. The Court, then, certainly drew a very incorrect legal inference from the fact proved.

The only remaining question is, whether there was error in not nonsuiting the plaintiff. In the case of *Pratt* v. *Hull*, (13 *Johns. Rep.* 334.) it was decided, that a Court of Common Pleas may compel a party to be nonsuited, without and against his consent, when, in their opinion, the evidence offered by him does not support his action, and there are no questions of fact to be weighed and considered by the jury. It was, also, decided in that case, that a bill of exceptions would lie to the decision of the Common Pleas upon a motion for a nonsuit, if such opinion was upon a mere matter of law arising upon facts not disputed. This Court may not have intended, in that case, to say, that a writ of error would lie to the decision of the Common Pleas, when they nonsuited the plaintiff upon a point of law; but I per-

ceive no difference in the cases; if a Court can rightfully nonsuit the plaintiff upon an undisputed state of facts, when the law is against him, they ought to do so; and the refusal to do it, is an error, in point of law. It ought not to be left with the Common Pleas to nonsuit the party when he has entirely failed to make out his case, or to omit to do it, capriciously. In the case last cited, we say, that the power of nonsuiting the plaintiff must be vested in the Court; that it results necessarily from their being made the judges of the law of the case, when no facts are in dispute, and that otherwise there is no meaning in what has been considered a salutary rule in Courts of justice, that to questions of law the judges are to respond. In many of the Courts of Common Pleas, there are no judges of the degree of counsellors of this Court; and, of course, no new trials can be had, however outrageous the verdict may be in point of amount, or however unsupported by evidence. In fact, in Courts thus constituted, having no power to grant new trials, the citizen may be deprived of the benefit of the laws made for the protection of his rights and property. In my judgment, we ought, as far as the law will permit, to give facility to suitors, by extending to them the right of taking their exceptions, so as to have the law applicable to their cases examined on a writ of error. On the ground, then, that the Court of Common Pleas refused to nonsuit the plaintiff below, when the evidence adduced entirely failed to make out his case, the judgment must be reversed, and a *venire de novo* issue from this Court. It has not been made an objection, that the writ of error is prosecuted solely in the name of *Foot*. I presume that the defendants below have been secured, or that the parties have waived all objection on that ground.

Judgment reversed, and a *venire de novo* awarded, returnable in this Court.