WILLIAM ROSS, Appellant, v. ORLANDO HURD, Impleaded, etc., Respondent.

Where an indorser of a promissory note, who has been discharged from liability by failure of the holder to make demand and give notice of non-payment, with full notice of the laches of the holder, unequivocally assents to continue his liability as though due protest had been made, he waives his right to object, and stands in the same position as if the proper steps had been taken to charge him.

The assent of the indorser to be bound may be established by any transaction between him and the holder, which clearly indicates such purpose and intent; the assent, however, must be clearly established and will not be inferred from doubtful or equivocal acts or language.

In an action against an indorser, who was a banker, plaintiff's evidence was to the effect, that, prior to the maturity of the note, plaintiff and defendant had some conversation in regard to extension of time, but no arrangement was made; after the discharge of the defendant by failure of demand and notice, plaintiff and K., the maker, went to defendant's bank to arrange an extension of time. K. asked plaintiff if he desired a new note. Plaintiff replied that if the parties agreed he would let the note stand as it was; defendant said, "then I will waive protest," and plaintiff thereupon agreed to an extension. *Held*, that the evidence was sufficient to authorize a finding that the defendant, with knowledge, assented to continue his liability; and that a nonsuit was error.

(Argued September 21, 1877; decided October 2, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order denying a motion for a new trial, and directing judgment on a verdict.

This was an action upon a promissory note made by defendant Kingsbury, and indorsed by defendant Hurd for the accommodation of the maker. Hurd alone defended.

The evidence is sufficiently set forth in the opinion. The court at the close of the evidence nonsuited the plaintiff, to which plaintiff's counsel duly excepted.

*J. McGuire*, for appellant. As the indorser had all the knowledge necessary to inform him of the demand of payment of the note and its dishonor, it was duly protested as to him. (1 Pars. on Bills and Notes, 434, 468, 469; 1 N. Y., 413; 36 id., 100; 3 Abb. Pr. [N. S.], 273.) If the note was not legally protested, as the omission to protest it was due to the acts of the indorser, he would be liable. (*Spencer* v. *Harvey*, 17 Wend., 491; *Bruce* v. *Lytle*, 13 Barb., 167; *Gove* v. *Wining*, 7 Metc., 212; 1 Pars. on Bills and Notes, 582.) An extension of time of payment of a note by the holder to the maker, with the assent of the indorser, is a waiver of protest. (*Barclay* v. *Weaver*, 19 Penn. St., 396; *Farmers' Bk.* v. *Wafles*, 4 Har., 429; *Ridgeway* v. *Day*, 13 Penn., 208; *Amoskeag Bk.* v. *Moore*, 37 N. H., 539; 1 Pars. on Bills and Notes, 528–587; *Sheldon* v. *Horton*, 53 Barb., 23; 43 N. Y., 93.) A promise by an indorser, after a note is dishonored, to pay or arrange it, with knowledge of the facts, dispenses with the necessity of proving a demand and notice. (*Pierson* v. *Hooker*, 3 J. R., 68; *Duryea* v. *Dennison*, 5 id., 248, 375; *Trimble* v. *Thorne*, 16 id., 152; *Seward* v. *Gary*, 10 Wend., 504, *Tebbits* v. *Dowd*, 23 id., 379.) A waiver may be by implication from acts as well as express words. (43 N. Y., 93; 31 id., 644.) The question of waiver should have been submitted to the jury. (23 Wend., 384; 48 Barb., 148; *Labar* v. *Coplin*, 4 N. Y., 547; *Sheridan* v. *B. & N. R. R. Co.*, 36 id., 39; *Lennox* v. *Hoppock*, 1 Sweeny, 466.)

*E. Countryman*, for respondent. The liability of an indorser of a promissory note can only be renewed or revived after its maturity by an express promise to the holder to pay the note, with full knowledge of the laches of the holder. (*Tebbits* v. *Dowd*, 23 Wend., 23; *Meyer* v. *Hibcher*, 47 N. Y., 265; Story on Prom. Notes [5th ed.], 360–363, § 289; *Barradale* v. *Lowe*, 4 Taunt., 93; *Thornton* v. *Wynn*, 12 Wheat, 183; 3 Kent's Com. [10th ed.], 162, 163; *Creamer* v. *Perry*, 17 Pick., 332–335; *Owego Bk.* v. *Knower*, H. & D., 122.)

ANDREWS, J. There was no demand or notice of non-payment of the note when it became due, and the plaintiff was not relieved from the necessity of making a demand and giving notice, by what occurred between the plaintiff and the defendant, at the interview on the first or second day of November, 1872, before the maturity of the note.

The evidence is that Kingsbury, the maker of the note, a few days before that time, had applied to the plaintiff to extend the time of payment ninety days, and the plaintiff consented to do so, if the note was kept good and secure. Tha plaintiff afterwards went to the bank and had the interview spoken of with the defendant. He informed the defendant of what had occurred between him and Kingsbury, and stated that he had come to make some arrangement with regard to the note. The plaintiff testifies: "I stated to him (Hurd) that I could let him (Kingsbury) have the money longer, if he kept it well secured or kept the note good (I don't recollect the exact words I used to him); and he said he guessed that could be fixed, and he would get Kingsbury in, or I was to, and I went out to look for him." The plaintiff then left the bank to find Kingsbury, but did not find him, and later in the afternoon returned to the bank to see the defendant; but, not finding him there, went away and did not see him again until after the note fell due. It is inferable, from this evidence, that the defendant was willing to continue his liability as indorser, but it was

left to be arranged at an interview to be had between all the parties. There was no request by Hurd that the plaintiff would extend the time of payment of the note, nor was anything said by him which would justify the plaintiff in believing that he would dispense with demand and notice, or which was calculated to mislead the plaintiff. The conversation clearly contemplated a new and substituted arrangement to be made before the note matured for continuing the loan. The plaintiff, therefore, was not entitled to recover, on the theory that this transaction dispensed with the necessity of protest. It is quite evident, however, that the plaintiff either did not understand that demand, and notice was necessary to charge an indorser, or supposed that what occurred between him and the indorser, on this occasion, made a protest unnecessary. He waited until the expiration of the second ninety days, and then went to the bank, with Kingsbury, and had a second interview with Hurd; and the liability of Hurd, in this action, depends upon what took place on that occasion. Kingsbury desired a still further extension of ninety days, and he procured from the bank (the defendant, Hurd, counting out the money for him) the sum necessary to pay the interest on the note to that time, and paid it to the plaintiff; and the plaintiff then spoke to Hurd about the extension of time, and Hurd replied: "You and Kingsbury can fix that about as you are a mind to." The testimony proceeds as follows: "He (Kingsbury) asked how I (plaintiff) would fix it; whether I would have a new note, or what; and I told him if both parties agreed I would let the note stand just as it was; and Hurd turned around from us, and said, then I will waive protest." This closed the conversation, and the plaintiff left the bank, and waited until the expiration of ninety days from that time, when he called upon the defendant, and informed him that the note was due, and that he would have to collect it; and soon after, the defendant claimed that the note had not been protested, and declined to pay it.

Upon these facts the question is presented, whether the nonsuit was properly granted. When the parties met at the bank, on the second occasion referred to, Hurd had been discharged from his liability as indorser, by the neglect of the plaintiff to take the steps necessary to fix his liability. But it was competent for the defendant to waive the objection arising from the plaintiff's laches, and to renew and continue his liability as indorser, and debar himself from setting up, when sued on the note, the want of protest as a defense. If an indorser, with full knowlege of the laches of the holder in neglecting to protest a note or bill, unequivocally assents to continue his liability, or to be responsible, as though due protest had been made, he is held to have waived the right to object, and will stand in the same position as if he had been regularly charged by presentment, demand and notice. This assent must be clearly established, and will not be inferred from doubtful or equivocal acts or language. It has been frequently held that a promise by the indorser to pay the note or bill, after he has been discharged by the failure to protest it, will bind the indorser, provided he had full knowledge of the laches when the promise was made. (*Trimble* v. *Thorne*, 16 J. R., 152 ; Sto. on Prom. Notes, §§ 359, 362, and cases cited.) A promise, made under these circumstances, affords the clearest evidence that the indorser does not intend to take advantage of the laches of the holder; and the law, without any new consideration moving between the parties, gives effect to the promise. The assent of the indorser to be bound, notwithstanding he has not been duly charged, may be established by any transaction between him and the holder, which clearly indicates this purpose and intention. In *Duryee* v. *Dennison* (5 J. R., 248), the action was against an indorser who had not been regularly charged by demand and notice. No demand of payment was made until the day after the note became due. To avoid the defense based on this ground, it was shown that, after the note became due, the attorney for the plaintiff called on the defendant and

informed him of the non-payment by the maker, and that the plaintiff looked to him for payment. The defendant was told at the same time that the demand and notice was irregular, but the defendant "agreed to consider the demand and notice as made in due time, and himself liable as indorser." The court held, that this was equivalent to a promise of payment, and authorized a verdict for the plaintiff. KENT, Ch. J., said: "We are of opinion that the testimony of Aiken, as given at the trial, was sufficient to support the verdict. The law is now settled that if an indorser has not had regular notice of non-payment by the drawer, yet if, with knowledge of that fact, he makes a subsequent promise to pay, it is a waiver of the want of due notice, and assumpsit will lie."

In the case at bar, we think the jury would have been authorized to find that the defendant, with knowledge of the fact that the note had not been protested, consented to be liable as indorser upon the note, and that his indorsement should stand as security to the plaintiff; and also the further fact that the plaintiff, in consideration of this consent, agreed to extend the time of payment of the note, and that such consent was given to induce such extension, without exacting a new security. In construing the transaction, the jury were entitled to consider the surrounding circumstances. The defendant was a banker, and familiar, as may be presumed, with the rules regarding the protest of commercial paper. His words, "I will waive the protest, then," had no significance, unless they were intended to remove the objection arising from the prior laches of the holder, in neglecting to protest the note at maturity. He intended, as is manifest, to continue his liability as indorser for the security of the plaintiff. He seemed to be willing to become obligated on a new instrument, or to renew his liability on the old one, as the plaintiff and Kingsbury should arrange. And the plain inference from the conversation is, that the plaintiff consented to let the old note stand, on consideration that the defendant continued liable thereon; and the defendant's declaration,

could mean nothing less than that he would make no question as to the protest of the note, or as to his liability as an indorser. This case is stronger in reason, for holding the indorser, than where there is a simple promise to pay after maturity. The transaction here, not only indicates an intention on the part of the indorser to remain bound, notwithstanding his discharge, but the waiver of the laches of the plaintiff was the consideration for the extension, given by the plaintiff to the maker.

The nonsuit was improperly granted, and the judgment should be reversed, and a new trial ordered.

All concur, except FOLGER and MILLER, JJ., absent.

Judgment reversed.