(42 App. Div. 520.)

### ROCKWELL v. DYE.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

CHECK—DELAY IN PRESENTMENT FOR PAYMENT—WAIVER.

. On April 8, 1893, D. bought cattle of B., and gave his check in payment on W., a private banker. B., though living within three miles of the bank, retained it, without presenting it at the bank, for about two months, and then transferred it to a third person. On July 3, 1893, W. died insolvent. On July 28, 1893, the check was presented for payment, protested for nonpayment, and redeemed by B. When the check was drawn, and until W.'s death, D. had sufficient funds in the bank to pay it; but after W.'s death he demanded of and received from W.'s administrator a dividend on the money to his credit in the bank, and tendered the dividend to the payee of the check. The exact amount of such money did not appear, but it was at least equal to the amount of the check. *Held*, that D. had not, by his conduct, waived his right to insist that he was discharged from his liability on the check by reason of B.'s laches, and that he was not liable thereon.

Hardin, P. J., dissenting.

.Appeal from Chautauqua county court.

Action by Hattie Rockwell against Asa E. Dye, administrator of Elisha E. Dye, begun in justice's court. From a judgment of the county court, reversing a judgment of nonsuit rendered by the justice, defendant appealed. Reversed.

The conceded facts of this case, which arose in a justice's court, are as follows, viz.: On the 8th day of April, 1893, the defendant's intestate purchased some cattle of one Elmina Bettis, for which he gave his check for $40, drawn upon the Forestville Bank, which was an individual bank, owned by one Wallace Ward. Mrs. Bettis, who resided within three miles of the bank, retained the check, without presenting it at the bank, for about two months, and then transferred the same to a third party. On the 3d day of July, 1893, Wallace Ward died, leaving an estate which was sufficient to pay only about 10 per cent. of his debts. On the 28th day of the same month the check in question was first presented for payment, and, payment thereof being refused, it was duly protested, and subsequently it was redeemed by Mrs. Bettis, who thereupon assigned the same, and any claim arising thereon, to the plaintiff in this action. At the time the check was drawn, and at all times thereafter, until the death of Wallace Ward, the drawer had sufficient funds on deposit in the Forestville Bank to meet the check, had it been presented; but, after the death of Ward, the drawer, demanded of and received from Ward's administrator a dividend upon the moneys remaining on deposit to his credit in the bank. The precise amount of such moneys does not appear, but it was at least equal to that called for by the check; and Dye thereafter made a tender to the payee named in the check of the amount received by him from the bank by way of dividend. Before assigning the check to the plaintiff Mrs. Bettis presented the same in due form to the administrator of Ward's estate, and · demanded payment thereof, which was refused, on the ground that Dye had filed a claim for the full amount of his account. Subsequently, and after the death of Dye, Mrs. Bettis presented a claim against his estate for the amount of her check, and, upon the refusal of the administrator to pay the same, this action was brought. Upon the facts above stated the plaintiff was nonsuited in justice's court, but, upon appeal to the county court, the judgment of nonsuit was reversed, with costs. ·

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Walter Record, for appellant.

Norman M. Allen, for respondent.

ADAMS, J. It is conceded that the plaintiff's assignor, by her laches in presenting her check and demanding payment thereof of the drawee, discharged the drawer to the extent of the loss sustained by him, unless it can be said that by his subsequent acts he expressly waived such laches. Obviously, therefore, the sole question with which we have to deal upon this review is whether, by demanding and receiving his dividend from the insolvent estate of Wallace Ward, the defendant's intestate deprived himself of the right to insist that he was discharged from all liability upon the check in suit, which, it may be assumed, for the purposes of this appeal, was received by the plaintiff's assignor in payment for her cattle. That a drawer of a check may waive any right which he has gained by reason of the failure of the payee or holder thereof to present the same to the drawee within a reasonable time is undeniable; and such waiver may be accomplished in various ways. For instance, if, with knowledge of the payee's laches and the insolvency of the drawee, the drawer promises to make good the check to the holder, this would amount to an express waiver. A waiver may, however, be inferred from circumstances, provided they are such as to indicate clearly and unequivocally an intent upon the part of the drawer to continue his liability; but, whether express or implied, it is only available in cases where the drawer acts with full knowledge of the payee's laches, and of the subsequent presentment and dishonor of the check. Ross v. Hurd, 71 N. Y. 14; Murphy v. Levy, 23 Misc. Rep. 147, 50 N. Y. Supp. 682. If, to illustrate, when the defendant's intestate demanded and received from Ward's administrator the dividend due him as a depositor, he knew that Mrs. Bettis' check had not been paid, and that the amount remaining to his credit at the bank was just sufficient to pay that check, it would not be unreasonable to infer that such amount had been allowed to remain on deposit to meet the check, and that, by withdrawing the same, or so much thereof as he was entitled to receive, the depositor intended to waive any laches upon the part of the holder of the check.

It is to be regretted that, in stipulating the facts of this case, the parties did not indicate with more particularity the amount remaining to the credit of Mr. Dye in the Forestville Bank at the time of its failure. It is conceded that it was equal to the amount of the check, but whether or not it was more is a mere matter of inference, and there is very little in the circumstances of the case from which an inference can be legitimately drawn which would tend to support the contention of either party. In this condition of affairs, it is difficult to see how the plaintiff can maintain her action; for, by reason of the most flagrant laches upon the part of her assignor, she is in no position to enforce the payment of her check, unless she can establish affirmatively, and by the clearest and most satis-

factory proof, that the defendant does not intend to take advantage of such laches, and this, in our opinion, she has fully failed to do. No question is raised as to the sufficiency of the tender.

The judgment of the county court should, consequently, be reversed, and that of the justice's court affirmed, with costs. All concur, except HARDIN, P. J., who dissents in a memorandum.

HARDIN, P. J. (dissenting). After reading the stipulation accompanying the pleadings in the justice's court in this case, I have read the opinion of Mr. Justice ADAMS. The case made before the justice, apparently, would have justified a judgment in favor of the plaintiff for the sum of $4.16, upon the following theory: The plaintiff was the owner of the check, and was also owner of the indebtedness for which it was given by assignment. The laches of her assignor in the nonpresentment of the check within a reasonable time after the same was drawn, to wit, the 8th of April, 1893, caused a loss to the drawer of the check, to wit, Dye, deceased. What was that loss? It was the sum which he failed to obtain of the administrator of the banker's estate. According to the statement made, the banker's estate paid 10.41 per cent., and to that extent Dye was not the loser when he received that sum from the administrator of the banker's estate. Dye was the loser, by reason of the laches of Mrs. Bettis, plaintiff's assignor, of 89.59 per cent. It is said that the money was tendered, and is now in the hands of Daniel E. Dye. It was the province of the defendant to have kept the tender good,—produced the money in the justice's court for the purpose of discharging the indebtedness. Having failed to do so, or the case failing to show that the tender was brought into court and kept good, why does not the plaintiff show a cause of action against the estate of Dye, the drawer of the check, for the sum of $4.16? If such ought to have been the result in the justice's court, to wit, a judgment in favor of the plaintiff for $4.16, then why is not the reversal made by the county court right? Entertaining, upon the perusal of the case and the opinion, the foregoing views, I think the reversal of the county court may be sustained.