furnish the foundation for a good cause of action. It is true that there is much in the case to sustain the defendant's contention that the instrument sued upon was never invested with any validity, and that it was in reality nothing more than a tentative proposition; but it was signed by Mrs. Hopkins, it does contain all the elements of a contract, and in some way it came into the plaintiff's possession. These are all circumstances which tend to create an issue of fact which we think should have been met and disposed of in the usual manner. In other words, the learned trial court should have permitted the jury to find upon the evidence in the case whether this instrument was ever in fact delivered to the plaintiff as a contract, and, if so, whether it was superseded by the deed of December 14th; and its failure to do so was error which requires that the judgment appealed from should be reversed, and a new trial directed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

(25 App. Div. 414.)

FIRST NAT. BANK OF FRIENDSHIP v. WESTON et al.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. NOTE—RIGHTS OF INDORSER—WAIVER OF PROTEST.
   An indorser of a note who indorses a renewal thereof before the note matures thereby consents to an extension of the original note, and waives the right of protest and notice.

2. PARTNERSHIP—INDORSEMENT OF NOTE.
   Where the indorsement of a note by a partnership for the accommodation of third parties is not within the scope of partnership business, such indorsement by one partner in the name of the firm is a fraud on the other partners, unless they consent.

3. NOTE—BONA FIDE PURCHASER.
   C. & Sons made a note to C., a member of the firm, who, having indorsed it, procured the indorsement of W. Bros., and discounted it at bank for his own benefit, before maturity, for value. The bank had no knowledge of the character of W. Bros.' indorsement, and made no inquiry. *Held*, that the facts were sufficient to put the bank upon inquiry, and charge it with such notice of bad faith in the indorsement of W. Bros. as to deprive it of the character of a bona fide holder.

4. DIRECTING VERDICT.
   Where each party requests the court to direct a verdict in his favor, it is not error for the court to take the case from the jury, and direct a verdict for one of the parties.

Action by the First National Bank of Friendship, N. Y., against Abijah Weston, impleaded, and others. A verdict having been directed for the defendants, a motion by plaintiff for a new trial upon exceptions was ordered to be heard in this court in the first instance. Exceptions overruled, and motion denied.

This action is upon a promissory note of $3,000, bearing date March 1, 1887, signed by George Van Campen & Sons, and payable to the order of George Van Campen two months after date. The note bears the indorsement of the payee, and also of "Weston Brothers," a firm which consisted of the defendants in this action; and, as thus indorsed, it was, before its maturity, discounted by the plaintiff, and a draft on New York for a part of the proceeds thereof

was delivered to the payee, George Van Campen, and the balance of such pro-
ceeds was placed to his credit upon the books of the bank.    When this note
matured, it was renewed by another note for a like amount, and executed by
the same parties.    This renewal note was in turn also renewed at its maturity,
and in this manner the original note was renewed from time to time until'
December 31, 1892, when the last renewal note was given, which ran for the ·
period of one year from its date.    When the original note was renewed, it
was canceled and surrendered to the makers, and the new note was substi-
tuted in its place upon the plaintiff's discount book.    Thereafter George Van ·
Campen died, and the subsequent renewals were made · payable to, and were
indorsed by, his administrator, J. K. Van Campen; but, with this exception,
the renewals, were executed by the same parties as the original note.    The
indorsement of the name of Weston Bros. was made by William W. Weston,
one of the firm, without the knowledge or consent of his co-partners, and as ·
an accommodation to the payee.    The defendant Abijah Weston, who was the
responsible member of the firm, although he had no knowledge that his
brother had indorsed this particular note, was informed that he was indorsing
similar paper in the firm name, and to a large amount.    He frequently found
fault with his brother for thus using the firm name, and insisted that he must
cease doing so; but, as his directions in this regard were not followed, the
firm was dissolved by mutual consent on the 5th day of January, 1892.    When ·
the last renewal note was presented to the bank, its president, Mr. Miner, who
is now dead, was informed by the payee, J. K. Van Campen, that the firm
of Weston Bros. had been dissolved; but he was also informed that the note
offered in renewal was indorsed by the firm prior to its dissolution.    Upon these
facts, together with some others to which allusion will be made in the opin-
ion which follows, both parties moved for the direction of a verdict at the close
of the proofs.    The defendants' motion was granted, and the plaintiff's ex-
ceptions were ordered to this court in the first instance.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, ͵
and WARD, JJ.

C. S. Cary, for appellant.
J. H. Waring, for respondents.

ADAMS, J.    The record before us does not disclose upon what
ground the direction of the verdict was given, but two propositions
are now presented by the learned counsel for the defendants, either
of which, it is contended, is sufficient to sustain the action of the
trial court.    These propositions are:    First, that no steps were
taken by the plaintiff at the maturity of the first note to charge the
indorsers thereon;  and, second, that the use of the firm name as
indorser upon the note for Van Campen's accommodation was a
fraud upon the defendant Abijah Weston, and that the plaintiff
failed to show that it was a bona fide purchaser for value, and with-
out knowledge of such fraudulent indorsement.    These propositions
will be considered in the order in which they have been stated.
It is an undisputed fact that the note in suit was not protested
at its maturity, and that the usual steps to charge the indorser were
omitted.    The important question, therefore, to be considered, is, .
what effect did such omission have upon the plaintiff's right of ac-
tion?    In pursuing the inquiry thus presented, it is to be borne in
mind that the taking of the successive renewals did not extinguish
the plaintiff's debt, or pay the original note, even though such note
was canceled and delivered up to the makers.    It simply operated to
extend the time of payment of the first note until the note given in
renewal thereof became due, when, if not paid, the plaintiff might sue ·

upon the original demand, and bring the renewal note into court, to be given up on the trial. Muldon v. Whitlock, 1 Cow. 290; Manufacturing Co. v. Connell, 88 Hun, 254, 34 N. Y. Supp. 717; Iron Co. v. Walker, 76 N. Y. 521. This being the case, it follows, we think, that whatever liability was assumed by the firm of Weston Bros. as indorsers of the note in suit was not discharged in consequence of the failure of the plaintiff to protest the same at its maturity. The defendant's undertaking, it is true, was not an absolute one, and, before it could become such, it was incumbent upon the plaintiff to notify him or his firm of the default in payment by the makers of the note; but this notice was something which the indorsers might waive, and the indorsement of the renewal note before the original note matured not only indicated that they knew that the time of payment of the first note was to be extended, but that they were willing it should be, and also that their liability as indorsers should continue. In these circumstances, protest and notice thereof would have been a mere idle form. The indorsers would have gained nothing by it, nor were they in any wise damnified by its omission; and, consequently, their second indorsement amounted to a waiver of their right to insist that the customary steps should have been taken to charge them as indorsers upon the original note. We have considered this branch of the case upon the assumption that the defendant, as a member of the firm of Weston Bros., incurred a liability in consequence of the indorsement of the note in suit by his firm; and we now come to the consideration of the effect of such indorsement, which, we doubt not, is the vital question in the case.

Unquestionably, the indorsement of notes for the accommodation of third parties is not within the scope of partnership business, and consequently the several indorsements of the Van Campen notes by William W. Weston, in the name of his firm, operated as a fraud upon his co-partners, unless made with their consent. Foot v. Sabin, 19 Johns. 154; Stall v. Bank, 18 Wend. 466; Smith v. Weston, 81 Hun, 87, 30 N. Y. Supp. 649. As correlative of this proposition, it may be asserted that, to entitle the plaintiff to recover against the defendant upon an indorsement thus made, it became necessary to show that it was a purchaser of the note in suit in good faith, and in the usual course of business. Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801; Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402. That the plaintiff purchased this note before its maturity, for a full and fair consideration, and without actual notice of its fraudulent indorsement, is not denied; but it is contended that the transaction at the time the note was discounted was of such a character as to charge the plaintiff with notice that Weston Bros. were mere sureties for the makers, and that the note had not passed through their hands in the ordinary course of partnership business. In short, it is insisted that the plaintiff was a purchaser of the note in bad faith; and this contention seems to call for a definition of the obligation resting upon a party to whom negotiable paper is presented for discount before its maturity. Fortunately, the rule which governs such transactions has been recently formulated by the court of ap-

peals, which, in referring to a holder of negotiable paper whose title was challenged in consequence of bad faith in its purchase, uses this language:

"He is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance. He does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title, or bad faith on his part, evidenced by circumstances." Cheever v. Railroad Co., 150 N. Y. 59, 44 N. E. 701.

It would seem only necessary, therefore, to apply the rule as thus stated to the case in hand, in order to test the correctness of the defendant's contention. As has just been shown, the plaintiff discounted the note in question before its maturity, and parted with full value when it obtained the same. It had no actual notice of the circumstances under which the note was indorsed, and, so far as it appears, made no effort to ascertain what they were; but this it was not called upon to do, unless there was something upon the face of the note itself which seemed to impose upon it the duty of active inquiry in order to avert the imputation of bad faith. Had the note in question been made by the firm of Weston Bros. to the order of Van Campen, and then transferred by the payee to the plaintiff for value, before maturity, a presumption would have arisen that it had been given in the ordinary course of business in payment of a debt due from the makers to the payee; and in such a case it would undoubtedly have been a valid obligation, as against the makers, although, in point of fact, it was given for the accommodation of the payee. Bank v. Morgan, 73 N. Y. 593. This, however, is not such a case, and in one essential particular it also differs from the Cheever Case, supra. In the last-mentioned case a note was made by the president of a corporation which was regularly executed, and which he was fully authorized to execute. It was made payable to the order of the president's private secretary, and by him indorsed over to a mercantile firm of which the president was a member. It was subsequently indorsed by such firm, and wrongfully diverted by the president into the hands of a stranger, having no knowledge or notice of any defect in the title, as collateral security for a cash advance of more than its amount upon the note of the firm and for its benefit. Upon this state of facts, it was held that the appearance of the signature of the president of the corporation upon the face of the note was not sufficient to put the transferee upon inquiry, so as to render him chargeable with all the facts that such inquiry would have revealed, and thus deprive him, as matter of law, of the character of a bona fide purchaser. In the case under consideration the note, it will be remembered, was made by Van Campen & Sons to the order of George Van Campen, a member of the firm. It was then indorsed by the payee, and subsequently by Weston Bros., after which it was taken by the payee to the bank, where he procured it to be discounted for his own benefit. These are circumstances, we think, which were well calculated to apprise the bank that the in-

49 N.Y.S.—35

dorsement of Weston Bros. was not made in the regular course of business, and that it could have been made for no other purpose than the accommodation of the payee; and, if so, then the plaintiff was bound to take notice that such indorsement was not within the scope of the partnership business; and if, with this notice, it discounted the note without inquiry as to the validity of the indorsement, it was chargeable with such bad faith as, in our opinion, deprived it of the character of a bona fide holder. Bank v. Bowen, 7 Wend. 158; Boyd v. Plumb, Id. 309; Joyce v. Williams, 14 Wend. 141; Fielden v. Lahens, 6 Abb. Prac. (N. S.) 341; National Park Bank v. German-American Mut. Warehouse & Security Co., 116 N. Y. 281, 22 N. E. 567; Smith v. Weston, 88 Hun, 25, 34 N. Y. Supp. 557.

In this connection it is proper to suggest that this action was originally brought upon the last renewal note. Upon the trial thereof it did not appear that the payee was a member of the firm of Van Campen & Sons, and considerable stress was laid upon this fact when the case came up for review at the general term. 88 Hun, 29, 34 N. Y. Supp. 558. Subsequently the complaint was amended so as to permit the plaintiff to count upon the first note; and, when the case came on for trial upon the issues thus tendered, it was expressly admitted that the payee therein was a member of the firm of Van Campen & Sons. Consequently, the reason which seems to have actuated the general term in granting a new trial no longer exists. We do not discover that there was any issue of fact in the case, and, if there was, no occasion arose for submitting it to the jury, inasmuch as both parties requested the direction of a verdict. Thompson v. Simpson, 128 N. Y. 270–283, 28 N. E. 627. Our conclusion of the whole matter is that the case was properly disposed of by the trial court, and that the plaintiff's motion should therefore be denied.

Plaintiff's exceptions overruled, motion for a new trial denied, and judgment ordered upon the verdict for the defendants, with costs. All concur.