HARVEY B. SPROUL, Respondent, *v.* SAMUEL BESKIN, Appellant.

Second Department, July 31, 1917.

**Bills and notes — action by indorser against prior indorser — defense that note was fraudulently filled out in violation of agreement — evidence as to transactions in absence of plaintiff admissible to establish agreement — burden of proof — effect of words " part renewal " preceding indorsement — when bank charged with notice of limited indorsement.**

Where in an action on a promissory note made to the order of the defendant as payee and indorsed by him and by the plaintiff, the complaint alleges that the maker procured the discount of the note at a bank; that it was not paid on maturity; that due notice of dishonor was given to the indorsers; and that plaintiff, the last indorser, paid the full amount to the bank and thereupon became the owner and the holder thereof, and the answer alleges in substance that at the time the note was made the bank was the holder of another note in which the same party was one of the makers and which was indorsed by the parties to this action in the same order; that as

such note was coming due a prior indorser induced the defendant to place his indorsement upon a blank note on the representation that it would, with the same makers, payees and indorsers, be used to renew a portion of the note then in the bank; that the said indorser unlawfully filled out the said note in the manner set forth in the complaint and procured the bank, contrary to the indorsement of the defendant, which was preceded by the words " part renewal," to accept it, thereby depriving the defendant of the security of responsible prior indorsers, it was reversible error to refuse to allow the defendant to prove that his signature was procured on the promise that the note would be filled up with the same indorsers as before, although the plaintiff was not present at the time of the transactions or conversations.

If the defendant had been permitted to prove the circumstances under which he gave his indorsement, he would have established a defect in the title and the burden of proof would have shifted to the plaintiff to show that his title was that of a holder in due course.

Under the circumstances, the words " part renewal " preceding the defendant's indorsement charged the bank with knowledge that there was a limitation upon the use of the indorsement, which was sufficient to put it upon inquiry.

APPEAL by the defendant, Samuel Beskin, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 9th day of February, 1917, upon the decision of the court after a trial before the court without a jury.

The complaint was on a promissory note for · $1,000, dated February 3, 1916, and payable two months after date at the Peekskill National Bank, made by one Clarence E. Gruner to the order of defendant as payee, indorsed by the defendant and by plaintiff. The complaint alleged that the maker procured the discount of the note at the Peekskill National Bank, that it was not paid on maturity, that due notice of dishonor was given to the indorsers, and that plaintiff, the last indorser, paid the full amount to the bank, and thereupon became the owner and the holder thereof. The answer alleged in substance that at the time the note was made, the bank was the holder of another note of $2,000, made by Gruner & Hollenbeck to the order of E. W. Hollenbeck and Frederick Gruner and indorsed by E. W. Hollenbeck, Frederick Gruner, Samuel Beskin and Harvey B. Sproul, in the order named; that as such note was coming due, Clarence Gruner, a member of the firm of Gruner & Hollenbeck, induced

defendant to place his indorsement upon a blank note on the representation that it would, with the same makers, payees and indorsers, be used to renew a portion of the note then lying in the bank; that the said Gruner unlawfully and feloniously filled out the said note in the manner set forth in the complaint, and procured the bank, illegally and contrary to the notice of the defendant, to accept it in part renewal of and to surrender the original note, thereby depriving the defendant of the security of responsible prior indorsers.

*James G. Meyer* [*John T. Kelly* with him on the brief], for the appellant.

*Clifford Couch* [*Franklin Couch* with him on the brief], for the respondent.

BLACKMAR, J.:

The plaintiff having proved the note, and that he had paid the same and taken it up from the bank, rested on the *prima facie* case. The burden then shifted to the defendant to prove the defective title to the note as alleged in the answer, but he was prevented from so doing by rulings by the court, on the ground that the plaintiff was not present at the time of the transaction. The defendant had the right to prove that his signature was procured on the promise that the note would be filled up with the same indorsers as before, and so afford him the security of the prior obligations, and that Gruner fraudulently filled it out in violation of the agreement. He was entitled to prove this whether plaintiff Sproul was present at the time of the conversations or not. In fact, the presence or absence of the plaintiff at the time of the transaction makes no difference whatever as to the relevancy or competency of evidence of the transaction, including conversations which were a part thereof. The repeated rulings of the court, excluding over defendant's objection and exception, evidence of the conversation between Gruner and defendant when defendant was induced to place his name on the back of a note to be filled up by Gruner, were erroneous. As the result of these rulings, all that was left of defendant's case then were the words " Part Renewal,"

which defendant wrote over his indorsement. The words "Part Renewal" in themselves carry no definite meaning. Their full meaning can only be ascertained when read in the light of the whole transaction, and the defendant was not permitted to show what the transaction was. If the defendant had been permitted to prove the allegations of his answer as to the circumstances under which he gave his indorsement, he would have proved a defect in the title (Neg. Inst. Law [Consol. Laws, chap. 38; Laws of 1909, chap. 43], § 94), and the burden would have shifted to the plaintiff to show that his title was that of a holder in due course. (Neg. Inst. Law, § 98.)

The remaining question is whether the defendant has not cured the error by calling the cashier of the Peekskill National Bank, and so showing that the bank was a holder in due course. The note was discounted for value, for the bank gave up the prior note which bore the obligation of the parties. The pre-existing debt was a sufficient consideration under the statute. (Neg. Inst. Law, § 51.) The question remains whether the bank took the note in good faith. (Neg. Inst. Law, § 91.) This depends upon whether it had knowledge of any defect or knowledge of any facts which should have put it upon inquiry (Neg. Inst. Law, § 95), and the burden of showing that the bank had no knowledge or notice equivalent to knowledge was on the plaintiff. (*Smith* v. *Weston*, 159 N. Y. 194.) The words "Part Renewal" were written over the indorsement of the defendant. Under the circumstances the words charged the bank with knowledge that there was a limitation put upon the use of the indorsement. A reasonable inference was that it was to be used in "part renewal" of another note, and the other to which it obviously referred was the original note upon which it was applied. A renewal means the continuance of the old obligation. (*Jagger Iron Co.* v. *Walker*, 76 N. Y. 521; *First National Bank* v. *Weston*, 25 App. Div. 414; *Hayward* v. *Empire State Sugar Co.*, 105 id. 21.) A continuance of the old obligation includes the continuance of the obligations of all parties liable thereon. The note was presented by the maker, indicating that it had not yet an inception. It was apparently complete on its face, and yet its form was such that it could not be

a part renewal of the other note, according to the accurate meaning of the term. The cashier of the bank testified that he knew that the word " renewal " had a special meaning; and that a note having this word could not be used for an original credit, but that this was a new transaction, and in effect that he relied on plaintiff's indorsement. Reasonable inquiry would have disclosed the situation, and if the allegations of the answer, which the defendant was not permitted to prove, represent the situation, which must be assumed for the purposes of this decision, the bank could not take the note in good faith. The question is not presented to us to determine whether, if the bank is a holder in due course, the plaintiff's position is the same. (Neg. Inst. Law, § 97.) When the situation is fully disclosed by the evidence, it may become an issue whether the plaintiff was a party to any fraud or illegality affecting this instrument. There is no evidence to that effect now in the record.

The judgment is reversed and a new trial granted, costs to abide the event.

JENKS, P. J., STAPLETON, RICH and PUTNAM, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.