Lockport Exchange Trust Company, Respondent, *v.* Gerald L. Hyde et al., Defendants, and Grant A. Hyde, Appellant.

2 

Argued March 12, 1937; decided April 27, 1937.

*Harold V. Bradley* for appellant. The mere signing of a renewal accommodation note, unaccompanied by any surrounding circumstances, does not waive due presentment and demand of payment and notice of presentment, demand of payment and non-payment. (*Oswego Bank* v. *Knower*, Hill & Denio, 122; *Cayuga County Bank* v. *Dill*, 5 Hill, 404; *Curry* v. *Van Wagner*, 32 Hun, 453; *Hayward* v. *Empire State Sugar Co.*, 105 App. Div. 21; *First Nat. Bank* v. *Gridley*, 112 App. Div. 398; *Cady* v. *Bradshaw*, 116 N. Y. 188.)

*Glen R. Bedenkapp* for respondent. The motion for direction of a verdict in favor of plaintiff was properly granted. (*National Hudson River Bank* v. *Reynolds*, 57 Hun, 307; *Leary* v. *Miller*, 61 N. Y. 488; *Clarke* v. *Stumpf*, 190 App. Div. 538; *First Nat. Bank* v. *Weston*, 25 App. Div. 414.)

CRANE, Ch. J. The statement that the indorsement of a renewal note is a waiver of notice of presentation and non-payment has proved to be misleading. The statement is true as applied to the non-payment of the first note; it is not true regarding notice of non-payment of the

renewal note. The failure to note this distinction has led to a misapplication of the authorities.

On the 6th day of January, 1926, a promissory note in the sum of $6,500, representing money loaned, was made by Gerald L. Hyde and Nettie L. Hyde to the order of Lockport Exchange Trust Company. E. C. Munzel was an indorser thereon. On March 8, 1926, upon renewal, Sierre N. Munzel became an indorser in addition to her husband. After various renewals the appellant, G. A. Hyde, also became an indorser upon the renewal notes. On February 4, 1932, a new promissory note was made for the sum of $5,086, due one month after date payable to the order of E. C. Munzel at the Lockport Exchange Trust Company, Lockport, N. Y., signed by Gerald L. Hyde and Nettie L. Hyde, and indorsed upon the back by E. C. Munzel, Sierre N. Munzel and G. A. Hyde. This also was a renewal note, one of a series which had been renewed from time to time by the bank, and was indorsed over by Munzel to the bank. The letter " G " in Hyde's name stands for " Grant," his name being Grant A. Hyde. He first became an indorser March 17, 1929, or three years after the original note had been made. On March 4, 1932, when this latter renewal note became due, the maker, Gerald L. Hyde, called at the bank and presented another renewal note dated the 4th day of March, 1932, in the same amount with the same makers and indorsers, and was told that the old note of February 4, 1932, could not be renewed until the interest was paid. No notice of non-payment of the February note was given to Grant A. Hyde nor any notice that the renewal note had not been accepted. The bank retained both notes. It did not return the February note, neither did it return or reject the renewal note; it simply kept both of them. The vice-president of the trust company testified: " Q. Was anything ever done thereafter with respect to this note of March 4, 1932? A. We just held it." Four years after this transaction, January 8, 1936, this action was

commenced against Grant A. Hyde, the indorser, to recover the amount of the note.

From 1926 up to February 4, 1932, the note had been renewed from time to time. From 1929 all the renewal notes bore the indorsement of Grant A. Hyde. Until notice of non-payment or refusal to accept the renewal note this indorser had every reason to expect that the bank would accept the renewal note of March 4, 1932. The bank took the note, kept it, but did not notify this indorser that it would not accept it as a renewal; neither did it give him notice of non-payment. Receiving no word at all from the bank, the indorser was justified in believing that the renewal note had been accepted and that the time of payment had been extended. The object of giving him notice of non-payment, as in the case of all indorsers, was that he might protect his rights against prior indorsers as well as against the maker. The action of the bank has placed him in the position where he may have, and probably has, lost whatever rights he had against these parties.

When the maker presented the note of March fourth and asked for a renewal, the bank, pursuant to the Negotiable Instruments Law (Cons. Laws, ch. 38), had the right to demand payment, or it could extend the time. If payment were demanded and refused the indorser had to be notified. If, according to the custom of banks, it was necessary to consult the officers or directors regarding the renewal note, the bank had a reasonable time within which to act, but within that time it was under duty to notify the indorser if payment were demanded. A renewal would be the suspension of his rights against other parties until the later due date. A demand of payment would compel him to act quickly upon notice from the bank. The bank, however, could not remain silent and leave its attitude to guesswork. An indorser, under the circumstances here existing, receiving no notice during four years, would naturally think that the note had been renewed and paid on the due date.

The courts below, relying upon the statement with which this opinion was commenced, that the indorsement of a renewal note waives notice of non-payment, have held in effect that ever since 1926, the expiring date of the original note, no indorser was entitled to notice of presentment and non-payment because the renewal notes constituted a waiver thereof. Such is not the law, and all reason is against it.

Presentment of a note for payment is necessary in order to charge the indorsers. (Neg. Inst. Law, § 130.) When a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer or to each indorser, and any drawer or indorser to whom such notice is not given is discharged (§ 160). Notice of dishonor may be waived either before the time of giving notice has arrived or after the omission to give due notice, and the waiver may be express or implied (§ 180).

The right of Grant A. Hyde as against the indorsers of these notes is expressed in section 116 of the Negotiable Instruments Law, as follows: " Every indorser who indorses without qualification, warrants to all subsequent holders in due course * * * that on due present-ment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it."

In *Sheldon* v. *Horton* (43 N. Y. 93) the indorser was held to have waived notice because, when the note was presented to him, he was told that the maker wanted it to remain another year, and he said he was willing to let it remain, saying that the note was good. No new note was given. Under these circumstances it was held that any further notice was unnecessary. Judge ANDREWS wrote the opinion, saying: " The liability of an indorser of a note to pay it is, in general, upon the implied condition

that payment thereof shall be demanded of the maker at maturity, and in case of default, that notice of non-payment shall thereupon be given to the indorser. These conditions are for the benefit and protection of the indorser. The demand i to be made, so that the principal debtor, may be first called upon to pay the debt, and notice of non-payment, in case of default is to be given, so that the indorser may have prompt notice, and the opportunity to protect himself from loss " (p. 96).

Another case of waiver was *Cady* v. *Bradshaw* (116 N. Y. 188). Here, again, the indorser became active in behalf of the maker and requested of the holder that the maker be given another year in which to pay the note. The holder said that he was willing, if the defendant would let his name be on the note, " let it be as it was," and the indorser said he would let the note stand just as it was. There was no renewal note. PARKER, J., in writing the opinion, said: " When he asked that the time of payment be extended a year, he, in effect, requested that no demand of payment be made at maturity. That request, coupled with his promise to let his name remain on the note if the time of payment should be extended, must, we think, be held to constitute, in legal effect, a waiver of demand and notice of non-payment. * * * the agreement was not only to extend the time of payment for one year, but it was also distinctly agreed that the note should remain as it was, with the name of the indorser thereon " (pp. 191, 192). Waiver, said the court in this case, must be clearly established and will not be inferred from doubtful or equivocal acts or language, citing *Ross* v. *Hurd* (71 N. Y. 14).

Chief Judge NELSON, in *Oswego Bank* v. *Knower* (Hill & Den. 122, 126), said: " Nothing short of the clearest evidence of the assent of the defendants, express or implied, should be regarded as sufficient to waive the condition, or change the nature of the contract, making it an absolute, instead of a conditional one." This case

is cited in 2 Daniels on the Law of Negotiable Instruments (7th ed., p. 1319, par. 1273) as authority for the author's text, which reads: " But a mere request for a renewal has been held no waiver of notice. And where notes indorsed for accommodation are not protested, and no notice is given, the signing of new notes for accommodation, which are given in renewal, is no waiver of notice."

*Hayward* v. *Empire State Sugar Co.* (105 App. Div. 21, Fourth Dept.) related to a renewal note. When the original note became due a renewal note was given whereby the indorser waived all " notice of presentment, dishonor and protest " of the renewal note. The renewal note was not presented on the day it became due, and the court held that, while the indorser had waived *notice* of presentment and dishonor, he had not waived *presentment*. WILLIAMS, J., said: " He did not waive presentment and demand of payment of the notes. (*Cook* v. *Warren*, 88 N. Y. 37, 41.) There was, therefore, a failure to charge the indorser upon the renewal note. * * *

" It is claimed, however, that the failure to present and demand payment of the renewal note operated to discharge the indorser from liability upon the original note; that the indorser was injured by failure of presentment and demand of payment of the renewal note, and this injury extended to the full amount of the renewal note, because, if the note had been so presented and payment demanded, it would have been paid by the maker, the sugar company, and the indorser relieved entirely from the payment thereof. It does not appear in the case whether such payment would have been made on presentment and demand, but in the absence of proof the presumption is that it would have been so paid. (*Commercial Bank of Albany* v. *Hughes*, 17 Wend. 94; *Smith* v. *Miller*, 43 N. Y. 172; 52 id. 548.)

* * * * * * *

" Assuming that the indorser would not be released unless he suffered injury and that the renewal note

would have been paid by the maker if it had been presented at maturity and payment demanded, the failure of such presentment and demand certainly injured the indorser to the extent of the full amount of the note and interest, and discharged him from all liability upon both notes. (See *First Nat. Bank* v. *Fourth Nat. Bank*, 77 N. Y. 320, 325; *Carroll* v. *Sweet*, 128 id. 19, 22; *Martin* v. *Home Bank*, 160 id. 191.)

" This was the theory upon which the case was disposed of by the trial court, and we see no reason to disturb the decision so made " (pp. 23, 24).

I have quoted thus fully to show that courts have treated renewal notes like original notes, all things being equal.

The giving of a renewal note and the *acceptance* thereof necessarily work a waiver of presentment and notice of non-payment of the previous note. This is what is meant by the statement that the giving of a renewal note is a waiver. As self-evident as this is; yet the contrary was claimed in *First Nat. Bank* v. *Weston* (25 App. Div. 414), where accommodation indorsers on a renewal note claimed that they were discharged because they had not received notice of non-payment of the original note. Such, of course, is not the law, but expressions used in the opinion have given rise to the statement that a renewal note amounts to a waiver which, as we have seen, is not the case except as it applies to previous notes. A similar case was *Leary* v. *Miller* (61 N. Y. 488), where notice of non-payment was given to an indorser on a renewal note which was void for usury. The claim was that notice of non-payment should have been given on the first note, which was not usurious. The renewal note having been accepted, of course amounted to a waiver of notice of non-payment of the first note. *Clarke* v. *Stumpf* (190 App. Div. 538, 540) again refers to non-payment of the first note after acceptance of a renewal note.

Those statements in *National Hudson River Bank* v. *Reynolds* (57 Hun, 307) not in harmony with these views cannot be approved. As the court placed its decision also on other grounds pertaining to mortgage security, this point may not have been thoroughly considered.

We conclude, therefore, that the indorsement and acceptance of a renewal note is not a waiver of notice of presentment and non-payment of *that* note as required by the Negotiable Instruments Law; that when a note becomes due and a renewal note is presented with the same indorsers, if it be not accepted, notice of demand and non-payment must likewise be given to the indorser, but in such case, if the holder, a bank or trust company, finds it is necessary to consult officers or directors regarding the renewal, then the holder has a reasonable time within which to act, that is, to accept or to give to the indorser of the proposed renewal note notice of non-payment. As the trust company in this case failed to give any notice or to act at all in the matter regarding the renewal note until it commenced this action, it cannot recover against this appellant, Grant A. Hyde.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgments reversed, etc.