NATHANIEL L. GOLDSTEIN, as Permanent Receiver of EQUITABLE MERCHANTS ASSOCIATION, INC., Respondent, v. BRASTONE CORPORATION, Defendant, Impleaded with HANS BRASSLER and LOUIS BARTELSTONE, Appellants.

Second Department, May 27, 1938.

*Lloyd F. Thanhouser*, for the appellants.

*Max Bergman* [*Bernard Mirsky* with him on the brief], for the respondent.

DAVIS, J. On August 13, 1931, the defendant corporation executed and delivered to Alson & Brown its note for $5,000, payable four months after date at The First National Bank, Farmingdale, N. Y. The note was signed by the individual defendants as the president and vice-president of the corporation, and it was also indorsed by them.

It is not disputed that the note came into the hands of the corporation of which plaintiff is the receiver and that it was a holder in due course; nor is it disputed that the note was not presented for payment at the date it fell due and that no notice of its dishonor was ever given to the indorsers.

Although the note became due on December 13, 1931, this action to recover thereon from the maker and indorsers was not commenced until October 20, 1936. The question presented is whether the indorsers became liable. The plaintiff had judgment against them on the trial.

The primary principles of liability are well settled. Indorsers are secondarily or conditionally liable for the payment of notes. (Neg. Inst. Law, § 3.) Here the defendants were accommodation and irregular indorsers, for they were neither makers nor payees. (§§ 55, 113, 114.) In order to fix their liability, presentment for payment was necessary, except under circumstances not present here (§§ 130, 131, 140), unless such presentment is waived (§ 142).

Likewise, notice of dishonor must be given to the indorsers, unless waived, either expressly or by implication — otherwise the indorsers are discharged. (§§ 160, 180; *Lockport Exchange Trust Co.* v. *Hyde*, 274 N. Y. 1, 5.)

The Negotiable Instruments Law is a codification of the law merchant, now practically uniform in many if not all of the jurisdictions of this country. The law merchant and its statutory successor were made up of arbitrary rules, so that in commercial transactions notes might pass freely from hand to hand with a definite understanding of the liability of makers and indorsers in the hands of holders for value in due course, regardless of latent defenses; and that the liability of indorsers or those secondarily liable might be discharged if the prescribed rules were not observed

and performed. The reason for giving notice to an indorser was early stated in this State by Mr. Justice NELSON in *Mechanics' Bank of N. Y.* v. *Griswold* (7 Wend. 165, 168) as follows: " The object of notice is to advise the endorser of his situation, that he is held responsible, so that he may take such steps as he thinks proper to indemnify himself against his liability; it is then his business to take up the note and obtain security from the maker."

Substantially the same rule was stated in *Cady* v. *Bradshaw* (116 N. Y. 188, 190, 191): " The liability of an indorser of a note to pay it is made to depend upon the implied condition that payment shall be demanded of the maker at maturity, and, in the event of default, that notice of non-payment shall be immediately given to the indorser. These conditions are for the benefit of the indorser, to enable him to have prompt notice of the default, so that he may immediately take steps to provide for his indemnity."

It matters not that the indorser is an officer of the corporation and may thereby have knowledge of the date on which the note falls due. The law treats him as it would a stranger; and this is practically the rule in all jurisdictions. The officers simply lend their individual credit to the corporation, and the fact that the corporation is known to be insolvent or bankrupt furnishes no excuse for failure to give such notice. Mere knowledge of the dishonor is held not equivalent to the notice, which must come from the one who is entitled to look to the party for payment and must inform him that the note has been duly presented for payment; that it has been dishonored, and that the holder looks to him for payment. We cite only a few of the many authorities. (*Bovay* v. *Fuller*, 63 F. [2d] 280, 283; *Case* v. *McKinnis*, 107 Ore. 223; 213 P. 422; *Grandison* v. *Robertson*, 231 Fed. 785.)

The plaintiff relies on waiver. He does not claim that there was any express waiver but says it may be implied from the fact that both appellants as the active officers of the corporation designated a specific bank for payment; that the corporation had no account at the designated bank at the time the note was made or when it became payable, and made no provisions, either before or at maturity, for funds or credit at the bank with which to pay the note upon due presentment; and that both appellants had actual knowledge of all these facts and knew that the note would not be paid if duly presented.

This reasoning would apply equally to any indorser who knew that the maker was insolvent; that he did not have funds at the bank where the note was payable, and that he probably would be unable to supply such funds. Nevertheless, he is entitled to have notice of dishonor so that he may take such steps as are necessary

to protect himself, by calling on the maker to invoke the aid of friends or relatives or to furnish some security.

A waiver may be either verbal or in writing; and it is not necessary that the waiver should be direct and positive. It may result from implication and usage, or from any understanding between the parties which is of a character to satisfy the mind that a waiver is intended. The assent must, however, be clearly established and will not be inferred from doubtful or equivocal acts or language. (*Cady* v. *Bradshaw, supra,* p. 191.)

There are cases where, under peculiar circumstances, it has been held that waiver may be implied. In *O'Bannon Co.* v. *Curran* (129 App. Div. 90) the president had indorsed the corporation note, and before the note matured the corporation, through his efforts and assent, went into bankruptcy, so that at the maturity of the note the maker was insolvent, its business suspended, its place of business closed, its property in the hands of a receiver, and the note was unpaid — of all of which the defendant president had actual knowledge. He was held liable. That is an extreme case.

In *Clarke* v. *Stumpf* (190 App. Div. 538) and *Mercer* v. *Hydrocarbon Converter Co.* (205 id. 78) it was held that there was waiver of notice when the indorsers requested the holder to accept a renewal note which they also indorsed. Doubt is cast upon the soundness of this rule by the determination of the Court of Appeals in *Lockport Exchange Trust Co.* v. *Hyde* (*supra*).

*Hayward* v. *Empire State Sugar Co.* (105 App. Div. 21; affd., 191 N. Y. 536) contains dicta which the respondent deems helpful. In that case there was a written waiver of notice of presentment, dishonor and protest, but no waiver of presentment, and it was held that the plaintiffs could not recover from the indorser.

There was no waiver here. It may seem a drastic rule to require notice of dishonor under such circumstances; but by long custom and by statute the rules of liability and non-liability have been determined. If exceptions are made to fit particular circumstances, then the purposeful rigidity of the law is frittered away.

The judgment, so far as an appeal is taken therefrom, should be reversed on the law, with costs, and the complaint dismissed, with costs.

LAZANSKY, P. J., JOHNSTON, ADEL and TAYLOR, JJ., concur.

Judgment, so far as an appeal is taken therefrom, reversed on the law, with costs, and complaint dismissed, with costs.