Matthew M. Levy, J.
On or about April 11, 1962, a promissory note in the sum of $6,250 was made in Hew York City by the defendant, Herald Square Bakers & Caterers, Inc., a corporation, to the order of the defendant Weintraub, and *73 indorsed in turn by him and the defendants Itldn and Goldman. The note was payable in three months at a bank in New York City at which the maker had an account. The plaintiff, engaged in the commercial finance business, received the note on the day following its date from the defendant Goldman in exchange for the plaintiff’s check in the sum of $5,965.62*, made payable to Goldman and indorsed by him to the maker, Herald Square. The note was delivered by the plaintiff to the bank for collection, but was not paid on its due date because the maker’s account was “ short ”.
Thereupon the plaintiff sued the maker and the three indorsers in this court, alleging that the plaintiff was a holder of the note in due course, that it had been duly presented for payment, that it was not paid, that it was duly protested and that due notice thereof was given to the maker and indorsers. The maker and the indorser Goldman defaulted in respect of the suit against them, the latter in the service of an answer to the complaint and both upon the trial of the action, which proceeded before me without a jury.
The contesting defendants on the trial were the other indorsers. Issues were raised by these defendants vis-a-vis the plaintiff by way of denial and defense. The principal disputes revolved around the issues as to whether the note had any inception prior to its purchase by the plaintiff from the defendant Goldman; as to whether the plaintiff was, as it claimed, a holder in due course; as to whether there was usury which, as alleged by the defendants, would taint the transaction and preclude recovery; and as to whether, as alleged by the plaintiff there was due notice to the indorsers of presentment, nonpayment and protest.
I have passed upon the proposed findings of fact and conclusions of law submitted by the respective parties. The only issue which needs consideration in this opinion is the last of those enumerated above.
It is undisputed that the contesting indorsers, Weintraub and Itkin, cannot be held in this action if there is no proof of due *74 notice to them of the presentment and dishonor of the note on the date when and the place where it was so provided in the instrument.* (See Negotiable Instruments Law, § 160; Uniform Commercial Code, § 3-508; Cady v. Bradshaw, 116 N. Y. 188, 190-191; Solomon v. Family Food Thrift Club, 2 A D 2d 507 [infra].) The legal efficacy of the proof that was submitted thus requires a recitation here of the relevant facts — in the light of the established law.
The plaintiff offered in evidence a 1 ‘ certificate ’ ’ in normal form, signed by one Horn, a notary public, and closing in usual fashion as follows: “ In Witness Whereof, I, the said Notary, have hereunto set my hand and affixed my official seal at New York, N. Y.”. The fact is, as readily appears on the face of the document, that there was no notarial seal thereon. The defendants objected to the admissibility of the paper on that ground. I overruled the objection, and the writing was received in evidence. The plaintiff rested, offering no further proof on that issue. I pointed out to the plaintiff’s trial counsel that, in accepting the proffer of the notarial document, I ruled upon its admissibility only, that the legal effect of an unsealed instrument of that nature was still to be determined, and that, in my view, it was insufficient, on its own, as due proof of presentment, dishonor, protest and notice — at least as to the contesting defendant indorsers.
There was and still is no doubt in my mind as to the validity of the ruling and the propriety of the caveat. Section 261 of the Negotiable Instruments Law provides that a “protest * * * must be under the hand and seal of the notary making it ’ \ Section 368 of the Civil Practice Act provides that, ‘ ‘ unless the party against whom it is offered has [within the time therein specified] served upon the adverse party * * * an original affidavit to the effect that he has not received notice of nonacceptance, or of non-payment of the note ”,** the “ certificate of a notary public of the state, under his hand and seal of office, of the presentment by him for acceptance or payment, or of the protest, for non-acceptance or non-payment of a promissory note or bill of exchange, or of the service of notice thereof on a party to the note or bill * * * is presumptive evidence of the facts certified,” (emphasis supplied throughout).
*75 Where there is no statutory requirement, a seal is held not to be necessary in some common-law jurisdictions (Bank of Kentucky v. Pursley, 3 T. B. Mon. [Ky.] 238; cf. Dawsey v. Kirven, 203 Ala. 446; see, also, Bank of Rochester v. Gray, 2 Hill [N. Y.] 227) and to the contrary in others (Morris v. Foreman, 1 Dall. [Pa.] 193; Merchants’ Bank v. Spinney, 13 N. S. 87). And a seal appears not to be required under the Civil Law (see Bank of Rochester v. Gray, 2 Hill [N. Y.] 227, 229, supra; Orr v. Lacy, 18 F. Cas. No. 10,589, 4 McLean 243 [C. C. Mich.]).
One might (quite naturally) suppose that in this day and age of New York’s supremacy in the banking and commercial world— as a result at least of the impact of the pressure of daily notarial transactions and of the concomitant onslaught of the need for modern clerical dispatch in the disposition of notarial business — the seal, however traditional it might be, had spent its pristine and ancient force. But I find that that is not so. Thus, as recently as 1956, the matter arose judicially in Solomon v. Family Food Thrift Club (2 A D 2d 507 [supra]), which was also an action to recover on a promissory note, and in which the serious question was also whether the defendant was given the notice of dishonor which he was entitled to receive as a prerequisite to the establishment of his liability as an indorser — for, as stated by the court, “ [i]f he did not receive due and proper notice, he was discharged. If he did, he is liable ” (p. 508). And the Appellate Division of the Supreme Court (Fourth Department), invoking section 368 of the Civil Practice Act, held in that case that the exhibit as to notice, upon which the plaintiffs relied, did not purport to be a certificate of the notary since, among other defects, it had no notarial seal. In consequence, said the court, at page 509: 11 [T]he proof falls far short of showing compliance with the section in question, and therefore there are no presumptions of fact afforded plaintiffs under that section.”
Nor has there been any legislative amelioration to this very date. Thus, section 3-509 of the Uniform Commercial Code (Article on Commercial Paper), which is to become effective on September 27, 1964, carries on the provisions of section 261 of the Negotiable Instruments Law in defining a protest as “ a certificate of dishonor made under the hand and seal of a * * * notary public Similarly, the recently enacted legislation related to the new Civil Practice Law and Buies, which becomes effective on September 1,1963, is in precise accord with the language of section 368 of the Civil Practice Act requiring a seal on the notary’s certificate in order that it might have *76 the force of presumptive evidence of the facts stated therein (see Negotiable Instruments Law, § 270, as added by L. 1962, ch. 310, § 293).
In the light of statute and precedent ignored or overlooked by the plaintiff, and the cul-de-sac in which it found itself upon the trial by virtue of its reliance upon the notary’s unsealed certificate, it moved the court for and, over the defendants’ objections, received leave to reopen its case, and also obtained an adjournment in order to present additional proof on this aspect of the action. That proof, as it turned out, consisted solely of the oral testimony of Horn, the notary. Upon the resumption of the trial the following day, Horn, asked by the plaintiff whether the facts stated in his certificate were true, responded in the affirmative. Among these stated facts are two of substance, and each will be separately considered.
The first is that he, the notary, having duly presented the note and demanded payment, and payment having been refused by the bank for the assigned reason that the maker’s account “ was short according to our [the bank’s] records ”, that 11 due notice ’ ’ thereof ‘ ‘ was given by me [the notary] to drawer, drawee, and respective endorsers of the said instrument * * *, the same being deposited by me in the Post Office of New York, N. Y. enclosed in envelopes, with postage prepaid, duly directed to said parties ” (naming them and stating their addresses).
Upon further inquiry, however, the notary testified that he did not himself verify the postage or post the notices. The testimony elicited from the notary was to the effect that, while he personally inserted the notices in the envelopes directed to each of the individuals listed in the certificate of protest, he arranged for the mailing of the notice by a fellow employee, the mail clerk of the bank, and that he, the notary, gave the envelopes to the clerk for mailing, in accordance with the procedure and custom of the bank. No further proof was adduced by the plaintiff.
The authorities are uniform to the effect that such testimony is insufficient proof of mailing. Even were the omission of the seal on the notarial certificate held not to negate its presumptive force, the document remains ineffective insofar as proof of notice is concerned — in view of the testimony of the notary that he did not in fact mail the notice. In Robinson v. Lancaster Foundry Co. (152 Md. 81) the court held that the notary must base his certificate upon personal knowledge, and his oral testimony must bear this out. In Onondaga County Bank v. Bates (3 Hill [N. Y.] 53) a certificate of protest was held inad *77 missible because the notary himself did not personally make presentment as the statute, now section 368 of the Civil Practice Act, required. (See Gawtry v. Doane, 51 N. Y. 84, 90.) In Commercial Bank of Kentucky v. Barksdale (36 Mo. 563, 572) the court said: “ The protest is to be evidence of the facts stated in it, of which the notary is supposed to have personal knowledge, and credit is given to his official statements # * *. In court, the instrument speaks as a witness. Such statements made merely upon the information of another person would amount to hearsay only, if the notary were himself upon the stand as a witness. The notarial protest must state facts known to the person who makes it, and he cannot delegate his official character or his functions to another.”
In Bell v. Anderson (143 Pa. Super. 56, 68) the court held that the plaintiff failed to make out a prima facie case showing notice of dishonor of the note, in accordance with the statute. 1 ‘ The notary’s testimony in court not only failed to show the giving of such notice, but it contradicted any inference of notice to the indorser which the plaintiff sought to draw from the certificate, and established that the notary had not personally sent such a notice, and the clerk whom he had deputed to send it was not called and did not testify that she had done so ”. Here too, the notary’s testimony — having, in the best of circumstances, rendered his certificate impotent — appropriate common-law proof was required. (See Hunt v. Maybee, 7 N. Y. 266; Stewart v. Allison, 6 S. & R. [Pa.] 324; cf. Littmann v. Goldstein, 255 App. Div. 540.)
In Commercial Cable Bldg. Co. v. McKenna (171 N. Y. S. 409) there was the further element that the alleged recipient denied receipt, but the crucial question before the Appellate Term of the Supreme Court, First Department, was whether or not the testimony adduced was sufficient to prove mailing. The court said, at pages 409-M10: 11 Plaintiff’s accountant testified that he dictated the letter, that it was written out, signed by plaintiff’s treasurer, and then placed by the witness in an envelope with the plaintiff’s card on the outside, and handed by him to the mailing clerk to be stamped and dropped in the mail chute, and that this was the regular procedure of the office with regard to the writing and mailing of letters. The mailing clerk, however, was not called as a witness to fill the gap in the proof as to mailing, or as to showing an invariable practice as to all letters so handed to him, and hence the letter was inadmissible.”
In Hastings v. Brooklyn Life Ins. Co. (138 N. Y. 473) the court was considering the adequacy of the proof of mailing. As *78 related by the court, the testimony at the trial was as follows (p. 477): “ The secretary swore that he wrote and signed the letter and then gave it to an attendant to copy in the book, who brought it back to him in such a condition as to show that it had been in the letter press. The secretary, as he swears, then folded and inclosed it in a sealed envelope, with a notice upon it to return unless delivered, directed it to the insured, and then put it in a basket in the office where letters for mailing were usually placed. This is all the secretary knew about the mailing of the letter, but the porter in the office testified that his business was to take the letters from the basket and mail them; that he mailed all letters found in the basket, but had no recollection of ever seeing or handling this particular letter. He knew nothing on that point except what is to be inferred from his usual custom and practice.” The court thereupon determined (pp. 477-478) that, while it “ could not be held, therefore, as matter of law, that the facts shown established the mailing of the letter [even though] the facts and circumstances in support of that conclusion are quite persuasive and would amply warrant the jury in finding that it had been mailed, * * * the question was one within their province and should not have been determined by the court.”
It is to be noted that in Hastings, the porter testified at the trial that it was he who had the duty of mailing the letters and that it was his custom and practice to do so. It was he who had personal and not hearsay knowledge of what was done with respect to postage and posting — not the secretary. This testimony is precisely what is missing in the instant case, because here the plaintiff failed to call the mail clerk to testify that it was his custom and practice to do the final checking and actually to do the mailing of all notices of protest.
A leading case in this State is Gardam & Son v. Batterson (198 N. Y. 175) where the issue before the court was whether copies of letters were properly excluded by the trial court upon the ground of insufficient proof of the mailing of the originals thereof. The 'Court of Appeals, holding that the ruling at the trial was correct, narrated the basic proof, at page 178: “ The defendant testified to the paper writings being-copies of original letters written by Beadnell; that the originals were addressed to the plaintiff, sealed, stamped, and put in a box, or tray, ‘ on my desk to be mailed in the post office, the same as I always do with every letter going from my office. * * * They were put in there for the purpose of being- mailed by somebody in my employ. I am head of a big insurance com *79 pany down there. The letters are taken from that tray periodically through the day * * " by the clerk, whose duty it was to gather up the mail and post it. That was the way that all the mail that emanated from my office always went through the post. That was the regular course of business in my office every day.’ ”
But, as pointed out by the court at page 178: “No clerk, or employé, was called by the defendant, as a witness to prove anything further upon the subject of the posting of letters deposited in the box, or tray, described. This [the court held] fell far short of proof warranting the presumption that the letters had been mailed.” And the court, in sustaining the ruling that the copies of the letters were properly excluded because of the insufficient proof of mailing, held, at page 180: “ It was essential, in this case, to the admissibility of the copies, that the testimony of the defendant as to the sending of the letters should have been supplemented by the further evidence of the clerk, or other employé, whose duty it was to post letters, that in the regular course of business he had invariably collected the letters upon the defendant’s desk and had posted them. However strong the convictions and the statements of the defendant as to the usual mailing of the letters placed on his desk, there was the gap in the proof, created by the failure to show that regular practice, or custom, of carrying them to the post, by some one charged with that duty, from which a presumption would naturally arise of these letters having been posted.”
As Professor Wigmore, in his treatise on Evidence, clearly implies, the testimony of the notary must be based on personal observation and knowledge (3d ed., vol. V, § 1635, pp. 525-529): “ Thus, a notary may testify that his habit is always to mail a notice of protest, and this habit alone (apart from or in the absence of a minute of the sending) would be receivable to indicate the probability that a specific notice was sent ’ ’ (1 Wigmore, Evidence [3d ed.], § 98, p. 533).
In my view, the accent here is on mailing, and the principle would apply with equal force to the mail clerk as to the notary, for “ [t]he notice [of dishonor] may be given by or on behalf of the holder, or by or on behalf of any party to the instrument who might be compelled to pay it to the holder, and who, upon taking it up, would have a right to reimbursement from the party to whom the notice is given” (Negotiable Instruments Law, § 161). Had such testimony been presented by the plaintiff in the case at bar, then the proof of mailing might well have *80 been held, at least prima facie, .sufficient as a matter of fact. Without such testimony, the evidence of due mailing is insufficient as a matter of law.
The second statement of fact in the notary’s certificate to which I shall now give attention was previously mentioned, and is to the effect that the notary has ‘ ‘ hereunto set my hand and affixed my official seal ”.
I have hereinbefore referred to the absence of the seal, a condition obvious from an inspection of the document. When the notary testified upon the trial, I asked him to explain that absence. His response was that he did not use his notarial seal unless the document involved was to be used outside the State of New York or in a Federal court. He sought to justify this procedure on the basis of printed “instructions” which he received from the ‘County Clerk’s office upon the renewal of his notarial appointment.
The card to which the witness referred as having been received from the County Clerk of New York County informed the notary of his number, the date of expiration of his term of office as notary, informed him as to the requirement of the law as to the data to be supplied under his notarial signature, suggested a form of notarial stamp, and then read: “Seal. Always use an impression seal when you place your notarial signature on a paper which is to be used in a Federal court or department or in another state or country.”
Of course, it is plain enough that this is not an ‘1 instruction ’ ’ by the County Clerk to the notary that he is not to use his notarial seal in other instances. I can unhesitatingly say that, in the light of the express language of the legislative enactments having to do with notarial certificates of protest, it is not to be assumed that the County Clerk gave the notary a directive to the contrary. And, even were it otherwise, the County Clerk’s memorandum (prepared by him for the convenience of the notary) cannot have the force of law. Nor can it overcome the effect of the absence of the seal on the “ certificate ” here involved or permit the notary’s inaccurate statement — that he had, indeed, affixed the seal to the instrument — to be ignored in the present controversy.
The point has not been raised by the plaintiff, but I thought it advisable on my own to look into the question as to whether the pleaded denial by the defendants of the plaintiff’s allegations of presentment, nonpayment, protest and due notice thereof was sufficient to put the plaintiff to its proof, or whether that is a matter that must be raised by an expressly interposed defense in the answers. The precedents are to the effect *81 that the affirmative burden of pleading and of proof as to this issue is upon the plaintiff (Fuller Buggy Co. v. Waldron, 112 App. Div. 814, affd. 188 N. Y. 630; Goldstein v. Brastone, 254 App. Div. 288, affd. 279 N. Y. 775; Studebaker Bros. Co. v. Fuerther, 123 N. Y. S. 118; Shuster v. Goldberg, 216 N. Y. S. 2d 199; see, also, Patchogue Bank v. Ambrose, 278 App. Div. 582).
The plaintiff was afforded full opportunity upon the trial to submit the required proof. It failed to do so and must take the consequences of the rules of law in the premises. The motion of the plaintiff for judgment against the defendant indorsers, Weintraub and Itkin, is denied. The separate motions of these defendants for judgment dismissing the complaint against them, respectively, are granted. The motion of the defendant Itkin for judgment over against the defendant Weintraub is denied as academic. A decision has been signed accordingly.

 This amounted to interest or discount, as claimed by the defendants or plaintiff respectively, of 18% per annum.
In respect of the defense of usury raised by the defendants (and disposed of in the formal findings and conclusions), I deem worthy of noting' a literary reference to a recently published study entitled, A History of Interest Rates, written by Sidney Homer, an investment banker turned author. The subject is, surprisingly enough, a dramatic and dynamic one. The volume covers — quite interestingly — the subjects of credit and economics and the related civilizations of many lands and nations, past and present, during the period from 2000 B. C. to 1962 A. D.

 On the other hand, a maker of a promissory note need not, in the ordinary ease, receive such notice. (Hills v. Place, 48 N. Y. 520; Bush v. Gilmore, 45 App. Div. 89, dictum).

No such affidavit was asserted to have been served in the case at bar, but that, of course, does not overcome the absence of the required notarial seal or render efficacious a “ certificate ” which is therefore innocuous.