Marcus G. Christ, J.
This is an action in which the plaintiffs seek to recover $6,500 from the defendants, alleged to he due by the terms of a conditional sales contract and a written guaranty executed by the defendants and annexed to such contract. In a separate cause of action the plaintiffs seek to recover the same amount, as the balance due on a series of promissory notes made by a corporation and indorsed by the defendants.
The action came on for trial before the court and a jury on January 3, 1956. After one day of trial, the case had to be adjourned and the jury discharged owing to the death of the wife of the defendants’ attorney. The trial resumed on January 23, 1956 before the court without a jury pursuant to the consent of both sides.
The plaintiffs are partners doing business as Shenkin Store Equipment Co. The defendants were the sole officers, directors and stockholders of a domestic corporation known as Grant’s, Inc., organized by the defendants to engage in the restaurant business at Great Neck, N. Y. On or about December 21, 1951 Shenkin Store Equipment Co., as seller, and Grant’s, Inc., as buyer, executed a written agreement entitled ' ‘ Conditional Sales Contract ”. According to this contract the seller agreed to furnish all the labor, materials and equipment set forth in a schedule annexed to the contract for the lump sum price of $19,000. The buyer agreed to pay such price in the following manner: $3,500 on the execution of the contract (receipt of which is acknowledged by the seller on the face of the contract); $3,500 upon substantial completion of the work; and the balance of $12,000 by making and delivering a series of 24 promissory notes each in the amount of $500 and each bearing interest at the rate of 6% per annum. By the terms of the contract title to the chattels was retained by the seller until the buyer paid the contract price. If the buyer failed to pay a note when due then upon written demand of the seller the entire unpaid balance *335 would become due and payable and the seller would be entitled to retake the chattels and resell them according to law. Attached to the conditional sales contract was the following writing signed by the defendants: “ IT IS FURTHER UNDERSTOOD that in consideration of the acceptance by the SELLER of the annexed agreement and in consideration of the terms of payment arranged, we hereby guarantee the payments specified herein and agree to personally endorse the promissory notes called for in this agreement. ’ ’
The subject matter of the conditional sales contract fell into three general categories: (1) the sale of chattels which are clearly in the class of removable trade fixtures and equipment; (2) the sale and installation of fixtures which, in greater or lesser degree, were incorporated into the property and as to which work was required to be done beyond the mere delivery of the chattels themselves; and (3) the performance of work not connected with materials ordinarily considered as trade fixtures, as, for example, the laying of an asphalt tile floor and the making of certain alterations in the premises.
The seller did the work called for by the contract. The buyer made the two cash payments of $3,500 each and delivered the series of 24 notes indorsed by the defendants as required by the instrument of guaranty. On February 4, 1952 the seller negotiated the notes to General Commercial Acceptance Company (hereafter called “ G. C. A. C.”) and also assigned the contract between the seller and the buyer. The first three notes of the series were paid but the fourth note due June 15, 1952 was not paid. Because of this default G. C. A. C. notified the buyer of its election to declare the entire balance of $10,500 due and payable. The buyer and the defendants were notified that if such balance was not paid the conditional sales contract would be “foreclosed”, the chattels sold at public sale, and the buyer as well as the defendants held liable for any deficiency resulting from such “ foreclosure ”. On June 25, 1952 a paper entitled ‘ ‘ notice of sale ’ ’ was sent to the buyer and to the defendants. This notice, after describing the conditional sales contract and its assignment to G. C. A. C., stated there was due thereunder $10,500 and that ‘1 the above described restaurant fixtures and equipment have been repossessed for default and will be sold at public auction in accordance with the provisions of the Personal Property Laws of the State of New York, on the 8th day of July, 1952 at 11:00 a.m., at the premises 31 South Middle Neck Road, Great Neck, N. Y., unless the aforesaid sum plus interest from January 30, 1952 is sooner paid to the Undersigned, together with the expense of taking, keeping and *336 storing said restaurant fixtures and equipment from the date of repossession.” Subsequently on July 2, 1952 a notice was published in the Nassau Daily Review-Star announcing that an auctioneer would conduct a sale on July 8, 1952 at 11:00 a.m. at the buyer’s premises of “ certain restaurant fixtures and equipment covered by Chattel Mortgage between Grant’s, Inc., Mortgagor and Schenkin Store Equipment Co., Mortgagee ”. This published notice was sent to the buyer by registered mail and received by it. In addition, copies of the published notice were posted by the auctioneer in the office of the village clerk of the Village of Great Neck, at the Long Island Railroad Station in Great Neck and in the United States Post Office in the same village. There were no bidders at the sale except G. C. A. C. to which the goods were sold on its bid of $4,000 with no cash being paid. Subsequently, G. C. A. C. was made whole through payment by the conditional seller. Thereupon the notes were redelivered to the conditional seller and the conditional sales contract reassigned. The conditional seller took the goods and has since disposed of them to other persons. The conditional buyer, Grant’s, Inc., failed financially and is bankrupt.
The defendants contend that the agreement under which the restaurant fixtures and equipment were sold was not a conditional sales contract. This contention is based upon the argument that because the agreement covered more than the sale of the chattels, i.e., labor and materials incidental to installing the equipment and making the premises suitable for operation as a restaurant, it was not a conditional sales contract. This contention the court finds untenable. The agreement insofar as it related to the chattels retaken was a conditional sales contract. To the extent that the agreement covered labor and materials furnished in order to prepare the premises to receive the fixtures and to adapt the premises for restaurant purposes it was more than a conditional sales contract. Such labor and materials not being applied to and incorporated in the chattels could not be the subject of a conditional sale and could not be retaken. The court concludes, therefore, that the agreement was a conditional sales contract as to the chattels even though the agreement covered other matters (Siegel v. Rieser, 97 Misc. 684).
The defendants contend further that even if the agreement is regarded as a conditional sales contract, the steps taken to enforce the conditional seller’s rights thereunder were not effective to create a deficiency for which a recovery could be had against the defendants. More specifically the defendants urge that G. O. A. C. served a notice of intention to retake the chat *337 tels pursuant to section 77 of the Personal Property Law but that it proceeded to retake the chattels before the minimum period of 20 days expired thereby rendering the retaking and the action taken subsequent thereto invalid. There is serious doubt whether this position can be sustained. The notice which the defendants say is a notice of intention to retake was not so labeled by G. C. A. C.; it was entitled “ Notice of Sale ”. Moreover, by its express terms it did not purport to express an intention to retake the chattels but rather announced that 1 ‘ the above described restaurant fixtures and equipment have been repossessed for default and will be sold at public auction ”. (Emphasis added.) The notice does not comply with section 77 in that it fails to state what the default is; contains no statement of the period at the end of which the goods will be retaken; and fails to set forth a brief and clear statement of what the buyer’s rights under article 4 of the Personal Property Law will be in ease the goods are retaken. There was thus no notice of intention to retake served pursuant to section 77 and therefore the question of compliance with time limitations under that section are not pertinent. What was done by G. C. A. C., in the absence of service of a notice of intention to retake, must be examined in the light of section 78 of the Personal Property Law. Under that section the goods may be retaken without any prior notice of intention to retake but the goods must be retained for 10 days during which period the buyer may redeem them. The court finds that the retaking here complied with the requirements of section 78 and that the resale of the chattels at public auction complied with the requirements of the law whether such resale be regarded as having been made pursuant to sections 79 or 80 of the Personal Property Law. The contention of the defendants that the description of the goods to be sold was inadequate and that the posting of the notice of sale was improper are without merit.
Despite the regularity of the public sale which resulted in the chattels being resold for $4,000, it does not follow that a deficiency arose within the meaning of section 80-b of the Personal Property Law. In the first cause of action the plaintiffs are seeking to recover an alleged deficiency of $6,500 from the defendants. The right to recover a déficiency after a resale of the chattels is controlled by section 80-b. It is there provided that “ the seller may recover the deficiency from the buyer, or from any one who has succeeded to the obligations of the buyer ” (emphasis added). The defendants were not the buyers under the conditional sales contract nor are they persons who succeeded to the obligations of the buyer, Grant’s, Inc. Furthermore, the *338 plaintiff’s position that the resale created a deficiency of $6,500 cannot be sustained. The manner in which the conditional sales contract was drawn makes it impossible to determine what deficiency, if any, there was arising from the resale. It is clear that the lump sum price stated in the conditional sales contract covered more than the price of the chattels. The parties to the contract did not allocate the stated price as between the sale of the chattels and the labor and materials furnished as an incident to such sale. For this reason, even though the agreement is found to be a conditional sales contract so far as the chattels are concerned and the retaking and resale proper, the court is unable to find that resale of the chattels for $4,000 created a deficiency of $6,500.
There remains the question of the defendants’ liability under the instrument of guaranty. Plaintiffs claim that the guaranty covered not only the two payments of $3,500 each but the $12,000 represented by the series of promissory notes. The defendants assert their guaranty did not extend to the notes. The court finds that the guaranty extended to the notes notwithstanding the fact that by the terms of the conditional sales contract the defendants agreed to indorse the series of notes. There is nothing inconsistent about having the same individuals obligate themselves both as note indorsers and guarantors of payment. However, accepting plaintiffs’ construction of the instrument of guaranty does not aid them to recover on their first cause of action. The liability of a surety is strictissimi juris (Smith v. Molleson, 148 N. Y. 241). He is not to be held beyond the precise stipulations of his contract. It is clear that in the first cause of action the plaintiffs are seeking to recover a deficiency allegedly arising from the resale following retaking of the chattels conditionally sold. Their claim is that the alleged deficiency of $6,500 is due and owing “ pursuant to said contract and guaranty ”. The difficulty with such a theory is* that the defendants by their guaranty did not obligate themselves to pay any deficiency which might arise from a resale of the chattels after they had been retaken. The instrument of guaranty obligated them (1) to guarantee the payments specified in the conditional sales contract and (2) to indorse the series of notes made by Grant’s, Inc. Under the principle of construction applicable to contracts of guaranty earlier mentioned the court may not read into this contract of guaranty an obligation on the part of the defendants to guarantee payment of any deficiency arising from the resale. For the reasons stated the plaintiffs have failed to establish their right to recover on the first cause of action.
*339 The court finds that there can he no recovery on the second cause of action set forth in the complaint. This cause of action is based upon the promissory notes. When G. C. A. C., the assignee of the seller, exercised its right to retake the chattels, no cause of action on the promissory notes given in part payment of the purchase price survived the retaking (Personal Property Law, § 80-d). This is true as to Grant’s, Inc., maker of the notes, and it necessarily follows that it is true as to the defendants who were secondarily liable on the notes as indorsers. Even if the court had determined that the agreement was not a conditional sales contract, the plaintiffs would be barred from recovering against the defendants. The fact that the defendants were the sole officers, directors and stockholders of Grant’s, Inc., did not relieve the holder of the notes from the obligation of complying with applicable provisions of the Negotiable Instruments Law (Goldstein v. Brastone Corp., 254 App. Div. 288). The evidence clearly establishes that when the fourth in the series of notes came due it was not presented for payment and no notice of dishonor was given to the defendants as indorsers (Negotiable Instruments Law, §§ 130, 160). The fifth note came due and an attempt at giving notice of dishonor to the defendants as indorsers was made but it was not timely and hence ineffective to charge them upon their secondary liability. It is undisputed that, despite the acceleration clause contained in all of the notes of the series, .the remaining notes were not presented for payment and no notice of dishonor was given to the defendants as indorsers. The failure to do so operated to discharge the defendants from their secondary liability.
The plaintiffs have failed to establish each of the causes of action set forth in the complaint and the defendants are entitled to judgment dismissing the complaint together with the costs and disbursements of this action.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.