Matthew M. Levy, J.
(I)
The plaintiff is an account executive with a brokerage house,, and is engaged in the business of buying and selling stocks and bonds. The defendant, a limited partnership, is another brokerage house with whom the plaintiff has had much business, both on his own account and' on that of his clients — indeed, the parties continue to do business with each other despite the pendency of this lawsuit. Both parties are without question knowledgeable and sophisticated aJbout matters concerning the handling of securities.
The plaintiff seeks redress for damages claimed to have been suffered by him due to the alleged failure of a third party to receive an item given by the plaintiff to the defendant to forward to that third party. As appears from the testimony presented to me, the case arose in the following manner:
In April — all of the dates herein are in 1966 — the plaintiff was the owner of certain bonds of S. Klein Department Stores Inc. (Klein). The bonds had been purchased with money lent by the Michigan Avenue National Bank located in Chicago (Chicago Bank)[1], the loan having been obtained through the *1075 defendant as broker, which received a commission therefor. The bonds were pledged as collateral security for the loan, and were delivered to Chicago Bank’s correspondent bank in New York. During early April, McCrory Corp. (McCrory), by public notice in the Wall Street Journal and in The New 7orh Times and by direct communication to the plaintiff, offered to exchange Klein bonds of the sort owned by the plaintiff for certain of McCrory bonds, plus warrants to purchase McCrory stock. The offer, by its terms as extended, required an executed tender form to be delivered to McCrory no later than 5:00 p.m. on the 29th of April.
On either the 26th or the 27th of April, depending on whether one accepts the plaintiff’s or the defendant’s version, respectively, the plaintiff delivered to the defendant an executed tender form, pursuant to the offer by McCrory, for forwarding to Chicago Bank, whose approval was necessary to effectuate the tender. On the 12th of May, for the first time, the plaintiff discovered that Chicago Bank never received his executed tender form. He therefore was not the owner of the McCrory bonds and warrants, as he had assumed, but instead still owned the Klein bonds. He now seeks to recover damages from the defendant, which he claims resulted from his ownership of the Klein rather than the McCrory securities. The defendant admitted receipt of the tender form from the plaintiff, but asserted that it did in fact mail the form, on April 27th, to Chicago Bank.
(H)
Several contentions of the parties can be disposed of in short order.
First: I hold that, on the pleadings and proof in this case, I need not separately consider — at least on the question of the defendant’s liability — the plaintiff’s first cause of action, which (when liberally construed in favor of the pleader)[2] sounds in contract. The only agreement which could possibly be inferred from the complaint is an undertaking by the defendant that it would follow the “usual and customary methods used in such cases ’ ’ and would act ‘ ‘ in accordance with the rules and regulations of the New York Stock Exchange and Securities Exchange then prevailing.” There was no proof whatsoever of any rule or regulation of an exchange; and, as to demon *1076 strating failure to follow “usual and customary methods”, the determination of the facts (hereinafter set forth) on the negligence count is dispositive of the contract count as well.
Second: I hold that the affirmative defense pleaded by the defendant fails to state a valid defense. It would not avail the defendant, even if it were true — I make no finding of fact on this point — that it “ assumed no obligation to the plaintiff * * * and received no consideration therefor. ’ ’ The defendant does not deny that it undertook to forward the tender to Chicago Bank. Whether or not the defendant was bound by contract, express or implicit, to do so is of no moment in a cause of action based on negligence; it is enough that it assumed to mail the tender. (Cf. Glanzer v. Shepard, 233 N. Y. 236 [1922]; Marks v. Nambil Realty Co., 245 N. Y. 256 [1927].) Because it essayed to forward the form, it is to be held to a standard of reasonable care; and if it were negligent, and its negligence proximately caused damages to the plaintiff, it would be liable therefor.
Third: There is a disputed factual question as to whether the plaintiff delivered the tender to the defendant on the 26th or the 27th. However, the problem in the case is that the letter was never received by Chicago Bank, not that it was received late. It therefore does not aid the plaintiff’s case to find, as he urges, that delivery by him to the defendant was on the 26th; nor would it help the defendant if I were to find such delivery to have occurred on the following day, as it contends. I therefore do not determine this issue.
(III)
The entire case thus reduces to the following question: Was the defendant negligent in discharging its obligation — which it assumed, whether or not it had to — to process and mail the tender form to Chicago Bank? If the answer is affirmative I should then go on to resolve the remaining issues of proximate causation and damages. If, on the other hand, the answer is negative, I shall pronto render judgment for the defendant.
It should be remembered, in considering the question of negligence, that the burden of proof is, of course, on the plaintiff. This means that he must either persuade the trier of the facts, by a fair preponderance of the credible evidence, that the defendant committed or omitted a specific act constituting negligence; or he must show such facts as would justify the invocation of the doctrine of res ipsa loquitur, which would shift the burden of going forward to the defendant (Plumb v. Rich *1077 mond Light & R. R. Co., 233 N. Y. 285, 290 [1922]; Abbott v. Page Airways, 23 N Y 2d 502 [1969]).
I hold that res ipsa has no bearing in this case because one crucial element is missing: that the instrumentality was solely within the control of the defendant.
The sum total of evidence on this point is the following: The defendant, admittedy having received the tender form from the plaintiff, undertook to process and mail it. The intended recipient, Chicago Bank, assertedly never received it.
There were thus three parties who had or ought to have had possession and custody of the tender form in the course of its transmittal from the defendant to Chicago Bank. The first is the defendant; the second is the United States Post Office Department; and the third is Chicago Bank. All that has been demonstrated is that the tender form began in the defendant’s hands, and ought to have been, but was not, in Chicago Bank’s hands at the end of the transmission process.
On the basis of this evidence, an inference that the defendant was negligent would be no more justifiable than a finding that the Post Office was at fault, or one that Chicago Bank was. That is to say, on this state of facts, there is no basis for deciding which of the three was negligent, or, indeed, that any of them was. If the possibility of negligence by someone other than the defendant is not ruled out, then the doctrine of res ipsa loquitur may not be applied (Hardie v. Boland Co., 205 N. Y. 336 [1912]; Manley v. New York Tel. Co., 303 N. Y. 18 [1951]).
(IV)
The plaintiff relies strongly upon the fact that it was not proved that Chicago Bank had received the tender form allegedly mailed to it by the defendant. And, indeed, it seems to be assumed by the parties that Chicago Bank did not receive the item in question. What, then, is the effect of that fact upon the issue as to whether or not the letter was duly mailed by the defendant?
The proposition “ If a letter was properly mailed, then it is presumed to have been received ’ ’ is, of course, long and well-recognized in the law of evidence (News Syndicate Co. v. Gatti Paper Stock Corp., 256 N. Y. 211 [1931]; Dulberg v. Equitable Life Assur. Soc. of U. S., 277 N. Y. 17 [1938]; Matter of Allstate Ins. Co. v. Flaumenbaum, 62 Misc 2d 32, 49, infra [Sup. Ct., N. Y. County, 1970]). Although not projected by the plaintiff, I have considered the question as to whether it should be equally accepted that “If a letter was not received, then *1078 it is presumed not to have been duly mailed ’ I should have supposed that this would follow as a matter of inexorable logic.
Each of the statements — “If P, then Q ” and “If not Q, then not P ” — is, of course, the contrapositive of the other. As expressed by Professors Morris Raphael Cohen and Ernest Nagel, the “full contrapositive is a proposition in which the subject is the contradictory of the original predicate and the predicate is the contradictory of the original subject.” (An Introduction to Logic and Scientific Method, p. 60 [1934].) As stated by Professor Terrell, the thesis is that “from a hypothetical statement together with the negation of its consequent, the negation of its antecedent may be inferred.” (D. B. Terrell, Logic: A Modern Introduction to Deductive Reasoning, p. 247 [1967].) This discipline of cognition, known as or related to the principle of “ modus tollens ”, was recognized as valid in ancient times (14 Encyclopaedia Britannica 209, 217, “Logic” [1968]).
A proposition and its contrapositive, of necessity, have the same truth value; that is, either both are true or both are false. As the proposition that a letter not received was not duly mailed is the contrapositive of stating that a letter duly mailed was received, I am of the opinion that the former is to be accorded the same truth value as the latter — and as the latter is accepted as a valid presumption, the former must be as well.
It is worthy of mention, I think, that courts in several jurisdictions other than New York have had occasion to consider this precise question, and have expressly held that such a presumption exists (Wilson v. Frankfort Mar., Acc. & Plate Glass Ins., Co., 77 N. H. 344, 346 [1914]; Calkins v. Vaughan, 217 Ala. 56, 59 [1927]; Hobson v. Security State Bank, 56 Idaho 601, 607-608 [1936]; National Aid Life Ins. Co. v. Parker, 191 Okla. 175, 176-177 [1942]; Employers’ Liab. Assur. Corp. v. Maes, 235 F. 2d 918, 921 [10th Cir. 1956] [New Mexico Law]; Burkitt v. Broyles, 317 S. W. 2d 762, 767-768 [Tex. Cir. App. 1958]; contra, Cherokee Ins. Co. v. Hardin, 202 Tenn. 110 [1957]).
I do not feel myself precluded from so holding by the decision of the Court of Appeals in Trusts & Guar. Co. v. Barnhardt (270 N. Y. 350 [1936]). That was an action by the holder against the indorser óf a promissory note, the only issue on appeal being “whether testimony by a defendant indorser to the effect that he never received the notice of dishonor and protest raised a question of fact as to whether it was in fact mailed to him as certified by the notary in his certificate ” (p. 352). After quot *1079 ing at length from the governing Canadian statutes[3], the Court of Appeals observed (p. 354): “ The statutes in question make the certificate prima facie evidence which, of course, means that it constitutes sufficient evidence until disputed by competent affirmative evidence offered by the indorser. Testimony that the notice was not received is competent as bearing upon the question of whether it was mailed. Is it sufficient to constitute a question of fact for a jury? To hold that it is, seems contrary to section 104 of the Canadian statute which provides in substance that if a certificate is properly mailed, it is sufficient even though it is lost in the mail. ’ ’
The opinion of the court is thus obviously based upon the thesis that, when there exists a statute making certain proof of mailing prima facie evidence thereof, testimony of nonreceipt standing alone will not suffice to raise a jury question. An example of a decision which, in my view, accepts this limitation is Goeller v. Equitable Life Assur. Soc. (251 App. Div. 371, 3721-373 [1st Dept., 1937]) in which the court said: “ The plaintiff * * * produced evidence of employees, together with his own testimony, that the notice had never reached its destination. Such evidence of non-receipt, however, was insufficient, since, if notice was mailed, although not received, the obligation imposed on the defendant by the statute was satisfied. This does not mean, of course, that the plaintiff could not rebut the presumption created by the affidavit by proof that notice was not mailed. We only hold that proof of non-receipt was insufficient for that purpose.
“In this respect the case is controlled by the decision in Trusts & Guarantee Co. v. Barnhardt (270 N. Y. 350), where it was held that testimony of an indorser on a note that he had not *1080 received notice of protest, was insufficient to create an issue of fact concerning mailing of the notice, established prima facie by a notarial certificate to that effect. Here, too, the statute was satisfied by the mailing of notice, though it may never have been received, and here, too, by statute, the affidavit was presumptive evidence of mailing. Although, as indicated in the opinion in Trusts & Guarantee Co. v. Barnhardt (supra), the authorities are divided on this question, it must now be regarded as definitely settled in this State. ” (Cf. Ætna Ins. Co. v. Millard, 25 A D 2d 341, 343 [3d Dept., 1966].)
The reasoning upon which the Barnhardt opinion was based has not been immune from academic criticism. As eminent an authority on the law of evidence as Dean Wigmore has strongly questioned the rationale of that decision.[4] However, I need not seek to fathom whether Barnhardt would be deemed a binding precedent today, for, insofar as the case at bar is concerned, there is no legislation making an affidavit or certificate of mailing prima facie proof thereof. In short, I do not consider the Barnhardt case as authority against my holding that there exists a general presumption in the law of evidence that a nondelivered letter was not duly mailed.
As I said recently in Allstate Ins. Co. v. Flaumenbaum (62 Misc 2d 32, 49, supra):
“ Presumptions are a form of legal fiction indulged in by the courts on occasion for various reasons. I call them ‘ fictions ’ because they permit the establishment of Fact B, without the necessity of presenting direct proof of that fact, but by showing the truth of Fact A. We reach the factual conclusion ‘ B ’ from the factual premise ‘ A ’ because experience tells us we may, or because of reasons of sound public policy.
“ Thus, for example, there is a presumption that a letter mailed is delivered, and that a person is dead after a number *1081 of years’ unexplained absence, because our experience is that this is almost invariably the case.”
So, too, in the case at bar, does experience justify a presumption. The normal regularity[5] of our post office service is such that it is proper to assume that a letter not received was not properly mailed. I therefore consider the presumption valid, and proceed accordingly.
(V)
It must be kept in mind that, in order for a presumption to be operative as such in any particular set of circumstances, there are two requirements: (1) that the premise be granted; and (2) that there be insufficient evidence to rebut it (Richardson, Evidence, Prince [9th ed.], § 54, p. 33 [1964]).
In the instant case, there is evidence which might justify invoking both presumptions: That a letter duly mailed is delivered, and that a letter not delivered was not duly mailed.
The first requisite — that the premise be granted — is met for both presumptions. The parties now in this litigation have agreed (at least sub silentio) that the letter was not received by Chicago Bank. And, as will later appear, I have come to the conclusion, as a fact, that the letter was duly mailed. By consequence, in the case at bar, each presumption is negated by the other.
It may be mentioned in passing that the effect of introducing evidence to contradict a presumption depends on the nature and purpose of the presumption. In some instances, a presumption remains as an inference (Piwowarski v. Cornwell, 273 N. Y. 226, 228 [1937]; Begley v. Prudential Ins. Co. of *1082 Amer., 1 N Y 2d 530, 533 [1956]; see 1 PJI 1:63 [Supplement 1969]). In others, it is totally removed from having any bearing upon the ultimate decision in the case. (People v. Richetti, 302 N. Y. 290, 298 [1951]; People v. Langan, 303 N. Y. 474, 480 [1952].) I need not determine the nature of the presumptions here, however, because, whatever their nature, I am persuaded by the evidence before me that the letter was duly mailed by the defendant. What is that evidence? Some of the proof is referred to now; some in the following section of this opinion.
Miss Farhi, testifying for the defendant, stated that, at the time in question, she was employed in the collateral loan department of the defendant and had been so employed for many years; that her invariable practice, when she received an executed tender offer from a customer (and she testified to receiving hundreds every year), was to attach a memorandum to it, and immediately mail it to the proper bank; and that no tender offer was allowed to remain overnight, but that it was always mailed on the day received. Mailing, she further testified, was not done in an envelope typed at the time, but in a pre-printed envelope made from a printing plate, for any bank with whom the defendant did sufficient business to justify making a plate. Chicago Bank was one such bank, and the tender would thus have been mailed in an envelope already printed with the correct address of the bank thereon, and of its vice-president, to whose attention the letter was directed.
In addition to this testimony as to the defendant’s office routine, Miss Farhi stated on the stand that she had some specific recollection of handling the tender in question. I find this credible, despite the hundreds of tenders that crossed Miss Farhi’s desk each year, and despite the period of years between the transaction and the trial. The plaintiff had been agonizing over whether to accept or not to accept the McCrory offer and the defendant’s office had had numerous occasions to call him to inquire if he had made up his mind. Miss Farhi herself made some of these calls, and therefore it is not unlikely that when the plaintiff finally resolved his uncertainties and decided to accept the McCrory offer, the matter would be worthy of more than passing note to Miss Farhi. Also, the fact that the tender had never been received was brought to Miss Farhi’s attention scarcely two weeks after she handled it; the incident could have been firmly fixed in her mind at that time. As to the steps in the defendant’s mailing process beyond that of Miss Farhi’s desk, the two persons who were the defendant’s mail clerks at the time in question testified that if the letter was in Miss *1083 Farhi’s ou.t-box, it must have been duly stamped and mailed, although neither of these witnesses had any specific recollection of the particular letter in issue.
(VI) •
In so holding, I have not overlooked a decision just reported and not discussed in the briefs of counsel (Caprino v. Nationwide Mut. Ins. Co., 34 A D 2d 522 [1st Dept., 1970]). The court held the evidence — presented there — of office practice and procedure to be inadequate proof of mailing. That case — which involved the presumption of delivery upon due proof of mailing — is, as I see it, distinguishable from the one now sub judice on at least two grounds.
First, as the majority of the court noted “ The burden of establishing the mailing of the notice of cancellation was on the [defendant] insurer. * * * The presumption of the delivery of the notice does not arise until adequate proof of mailing has been adduced. The defendant’s proof of its office practice and procedure followed in the regular course of business was insufficient properly to invoke the presumption and to overcome plaintiff’s denial of receipt of the notice of cancellation.” In the case before me, the burden of proof is not, as in Caprino, on the one seeking to prove proper mailing (the defendant) but on the one seeking to prove the opposite (the plaintiff). In that circumstance, therefore, the proof found inadequate in Caprino may be deemed sufficient in the instant case.
The second reason Caprino is not controlling here is that the proof presented by defendant in that case falls short of the proof proffered by the defendant here. There, it was shown only that some, but not all, of defendant’s mail was delivered to the post office, and there was no showing that the letter in question was among those mailed — the messenger not being called to testify. In the case at bar, on the other hand, all the mail was delivered to the post office by two employees of the defendant. The evidence was to the effect that these two clerks — the only ones employed by the defendant at the time — picked up all the mail from Miss Farhi’s desk, affixed postage with a machine (which also sealed the envelopes) and personally delivered the letters to the post office. This proof fully satisfies the requirements set forth in the cases relied upon by the plaintiff (Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473 [1893] ; Gardam & Son v. Batterson, 198 N. Y. 175 [1910]; Boyce v. National Commercial Bank & Trust Co., 41 Misc 2d 1071 [Sup. Ct., Albany County, 1964], affd. 22 A D 2d 848 [3d Dept., 1964]).
*1084 Nor have I ignored my own decision in A. & L. Trading Co. v. Herald Sq. Bakers & Caterers (40 Misc 2d 72 [Sup. Ct., N. Y. County, 1963]) — also cited by the plaintiff. There I had occasion to deal with this problem, and to discuss, among other precedents, the above-cited cases (except for Boyce, not then decided). The question before me at that time was proof of mailing of a notice of protest by a notary public. As I observed (p. 76): “ The notary testified that he did not himself verify the postage or post the notices. The testimony elicited from the notary was to the effect that, while he personally inserted the notices in the envelopes directed to each of the individuals listed in the certificate of protest, he arranged for the mailing of the notice by a fellow employee, the mail clerk of the bank, and that he, the notary, gave the envelopes to the clerk for mailing, in accordance with the procedure and custom of the bank. No further proof was adduced by the plaintiff. ’ ’
On the basis of this showing, and of my review of the decisions and texts, I concluded that ‘ ‘ The authorities are uniform to the effect that such testimony is insufficient proof of mailing ” (p. 76). In the case at bar, however, there is — as I have set forth above — adequate proof of mailing not found in A. & L. Trading.
(VH)
Turning to the plaintiff’s assertions of specific proof of negligence, the only evidence which might support such a finding is the plaintiff’s testimony in rebuttal that Braver, the employee of the defendant with whom the plaintiff dealt, ‘ ‘ spoke to me after May 13th, and he says to me, ‘ Mr. Teichberg, your papers, your tender offer papers, were found on the floor.’ This Mr. Braver said to me.” When cross-examined on the point, both Braver and Miss Farhi (neither of whom is an employee of the defendant any longer), expressly denied that such an incident had ever taken place or that -such a conversation was had.
If the papers were indeed found on the floor, it would be most likely that they would have been found shortly after they were delivered to the defendant on the 26th or 27th of April. If no mention of that was made to the plaintiff before he himself discovered on May 12th that the tender had not been received by Chicago Bank, then this must have been the result of a deliberate suppression of the truth by Braver. This being the case, I tbink it most unlikely that he would thereafter confess to the plaintiff, as the latter would have me believe. I thus fail to be persuaded by the plaintiff — and, as I have noted, the burden *1085 of persuasion rests upon him — that the papers were found on the floor of the defendant’s office.
The plaintiff’s other assignments of negligence can be disposed of summarily.
While the defendant admittedly failed to advise Chicago Bank by telegraph, telephone, or otherwise, of the forwarding of the executed tender form, there was no evidence that this was an accepted practice in the trade or customary under the circumstances, and therefore no showing that this failure was negligent. Indeed, all the testimony on the point was that such separate notification was never made.
As to the argument urged by the plaintiff in his brief — concerning the defendant’s alleged negligence in sending (or attempting to send) the letter to Chicago Bank rather than to its Hew York correspondent bank — it should be noted that the plaintiff alleges in his complaint that the defendant was to remit the document to Chicago Bank, not to any other bank. Moreover, in view of the necessity for prompt action, the plaintiff’s present contention is defeated by his own testimony on cross-examination, to the effect that he knew that the tender form would have to be transmitted, at least ultimately, to Chicago Bank, to be received by it in time to be processed, approved and delivered by Chicago Bank to McCrory on or before April 29. Furthermore (as I have said) it is nonmailing rather than late receipt which is of moment here and — so far as the plaintiff’s present complaint concerns us — there has been no showing that attempting to send the tender to the Hew York correspondent bank would have improved matters any.
(VIII)
The upshot of my thinking is that — whether I rest my decision on the principle of burden of proof, or of presumption, pro or con, or on the case as a whole — I find that the defendant was not negligent in any manner, that it duly mailed the tender form to Chicago Bank, and that the latter’s alleged failure to act upon the plaintiff’s tender form was not the fault of the defendant. The complaint is dismissed on the merits, and judgment is directed to be entered accordingly.
This opinion constitutes my decision in compliance with CPLR 4213. The exhibits have been delivered to the Clerk, to be returned to counsel upon due receipt therefor.

. Chicago Bank, named as a party defendant in this action, obtained an order vacating the service of process upon it and dismissing the complaint as against it. This defendant was therefore not a party to the action when the cause came to trial.

. See Mesiano v. Mazzeo, 12 Misc 2d 858, 859 (Sup. Ct., Bronx County, 1958) ; Russell v. Marboro Books, 18 Misc 2d 166, 183 (Sup. Ct., N. Y. County, 1959) ; Gilligan Constr. Corp. v. 104 Mac Realty, 34 Misc 2d 1070, 1071 (Sup. Ct., N. Y. County, 1962).

. “ Section 11. A protest of any bill or note within Canada, and any copy thereof as copied by the notary or justice of the peace, shall, in any action be prima facie evidence of presentation and dishonour, and also of service of notice of such presentation and dishonour as stated in such protest or copy.” (Rev. Stat. of Canada, 1927, p. 280.)
“ Section 103, Subd. 2. Such notice so addressed shall be sufficient, although the place of residence of such party is other than either of the places aforesaid, and shall be deemed to have been duly served and given for all purposes if it is deposited in any post office, with the postage paid thereon, at any time during the day on which presentment has been made, or on the next following juridical or business day.” (Rev. Stat. of Canada, 1927, p. 310.)
“ Section 104. Where a notice of dishonour is duly addressed and posted, as provided in the last preceding section, the sender is deemed to have given due notice of dishonour, notwithstanding any miscarriage by the post office ”. (Bills of Exchange Act, R. S. ch. 119, as quoted in 270 N. Y. at pp. 353-354.)

. “But did not the opinion fail to distinguish two things, (1) the conclusiveness of the mailing, and (2) the conclusiveness of the certificate? The statute virtually made the mailing the sufficient act, as a rule of substantive law, regardless of receipt by the addressee; hence his non-receipt was immaterial. But the fact of mailing remained open to proof, and the notary’s certificate was here not conclusive * *' *. The opinion concedes that ‘ the falsity of the certificate may be shown * * * by any competent evidence,’ and that ‘ evidence that notice was not received would undoubtedly be competent.’ Now the only available evidence would ordinarily be the testimony of the addressee and his staff, which was here offered for that purpose. The precise ruling is that such testimony is admissible but not sufficient to go to the jury, but reason given is the above § 104 of the statute. That section, however, assumes the fact of mailing, and its rule follows only when mailing is proved. But here it was the mailing that was disputed * * * and the reason given for the ruling is inadequate ”. (9 Wigmore, Evidence [3d ed.], § 2519, pp. 433-434.)

. It has been said that the postal service has, of late, not been up to par. The basic fact is not so notorious and universally recognized that I should take judicial notice of it (Galbraith v. Busch, 267 N. Y. 230 [1935] ; Boylhart v. DiMarco & Reimann, 270 N. Y. 217 [1936]; Owen v. Rochester-Penfield Bus Co., 304 N. Y. 457 [1952] ; McGrail v. Equitable Life Assur. Soc. of U. S., 292 N. Y. 419 [1944]; see Morgan, “Judicial Notice ”, 57 Harv. L. Rev. 269, 292-294). Nor has there been any evidence whatsoever presented in this ease in support of it.
The presumptions that a letter duly mailed will be delivered and that a letter not delivered was not properly mailed rest not alone upon the supposed efficiency of the post office — a rule of experience — but also upon the principle that government employees may be generally relied upon to perform their duties properly and upon the usual course of business (News Syndicate Co. v. Gatti Paper Stock Corp., 256 N. Y. 211, 214 [1931], supra). The latter are rules based on considerations of policy as well as of experience.
There is therefore nothing before me in the ease at bar which would undercut the validity of the presumptions under consideration here, for the reasons stated by me as to the general theory of presumptions in Allstate Ins. Co. v. Flaumenbaum, 62 Misc 2d 32, 49, supra.