Herbert A. Posner, J.
The "Dawn of the Age of Aquarius” has also ushered in the "Age of the Computer”.
There is no question that the modem computer is as indispensable to big business as the washing machine is to the American household. To ask the American housewife to go back to washing clothes by hand is as unthinkable as asking Consolidated Edison to send out its monthly bills by any other method than the computer.
This is an action in negligence by a builder against a public utility for damages sustained as a result of the alleged "wrongful” termination of electricity at an unoccupied one-family house (that had recently been constructed by the plaintiff) at 200-15 Pompeii Rd., Holliswood. Sometime in October, 1975, the defendant had installed electric services to the plaintiff’s property. On or about January 20, 1976, the defendant terminated such service because of two unpaid bills amounting to $25.11. Since the premises were unoccupied, the lack of electricity caused the motor which operated the heating unit to go off, which resulted in frozen water pipes, which burst and caused $1,030 of proven damages to the premises.
The defendant contends that it followed the mailing requirements of section 15 of the Transportation Corporations Law *234 and therefore had no obligation to the plaintiff. The statute reads as follows:
"15. Refusal or neglect to pay rent
"1. If any person supplied with gas or electric light by any such corporation shall neglect or refuse to pay the rent or remuneration due for the same or for the wires, pipes or fittings let by the corporation, for supplying or using such gas or electric light or for ascertaining the quantity consumed or used as required by his contract with the corporation, or shall refuse or neglect, after being required so to do, to make the deposit required, such corporation may discontinue the supply of gas or electric light to the premises of such person; and the officers, agents or workmen of such corporation may enter into or upon such premises between the hours of eight o’clock in the forenoon and six o’clock in the afternoon, and separate and carry away any meter, pipe, fittings, wires or other property of such corporation, and may disconnect any meter, pipe, fittings, wires or other works whether the property of the corporation or not, from the mains, pipes or wires of the corporation. But the supply of gas or electric light shall not be discontinued for non-payment of bills rendered for service until and after a five-day written notice has been served upon such person either by delivering the same to such person personally or by mailing the same in post-paid wrapper addressed to such person at premises where service is rendered. ” (Emphasis added.)
Defendant through the use of five witnesses, made out a good case proving that the notice to disconnect was probably mailed even though no witness had actual knowledge of mailing this specific notice. Obviously, it would be overly burdensome, if not impossible, to expect a utility mailing out thousands of disconnect notices a day to be able to prove that each one was individually mailed. The Court of Appeals in Gardam & Son v Batterson (198 NY 175) stated: In the absence of direct proof as to a particular letter being deposited with the post office or in a mailbox, the rule requires proof of a course of business or office practice according to which it naturally would have been so deposited.
Accordingly, this court finds that the defendant did comply with the statutory requirement of mailing even though we are also convinced that the plaintiff had never received the notice because an expert witness from the U. S. Postal Department testified that the postal service does not leave mail at an *235 unoccupied address. Unless a statute or the contract between the parties calls for actual notice (Boyce v Nationwide Mut. Fire Ins. Co., 41 Misc 2d 1071, affd 22 AD2d 848; Caprino v Nationwide Mut. Ins. Co., 34 AD2d 522; Manning v Boston Old Colony Ins. Co., 48 AD2d 838) proof of mailing is sufficient to prove notice, even though the notice was never received (Hurley v Olcott, 198 NY 132; Teichberg v Blair & Co., 63 Misc 2d 1073).
While the parties, at the trial and in their memoranda of law devoted considerable time to the issue of "notice”, the court finds that this is not the main issue in this case. Let us say that this was a "procedural” hurdle which Consolidated Edison cleared successfully. However, the court has serious doubts as to whether the defendant has cleared the "substantive” hurdle — did it act reasonably or negligently in discontinuing plaintiff’s electric service?
Section 15 of the Transportation Corporations Law gives a public utility supplying gas or electric the authority to discontinue the supply of gas or electric for "refusal or neglect to pay rent”, and it requires certain notice be given before such action can be taken. Since the language of the statute is discretionary in nature — "may discontinue” — it does not relieve the utility of its common-law obligation to exercise ordinary care when a decision to discontinue is made. The defendant’s witnesses stated that a customer’s file is opened when a new account is established and that all correspondence and other documents involving the customer are included in this file. Defendant’s attorney admitted that' he had found in such file the original letter from plaintiff requesting the opening of electrical current. This letter is reproduced in its entirety because of its significance to the case:
POMPEII ESTATES INC.
34-34 Bell Blvd.
Bayside, N.Y. 11361 212-631-4466
June 12, 1975
Con Edison
40-55 College Pt. Blvd.
Flushing, N.Y. 11354
Att: Mr. A. Vebeliunas — 670-6152
To Whom It May Concern:
Please be advised that there have been no changes in the *236 original Building Plans for the 2 Houses located at the following addresses:
House #1 — 200-15 Pompeii Rd., Holliswood, N.Y. — Lot #163
House #2 — 200-19 Pompeii Rd., Holliswood, N.Y. — Lot #160
Be further advised that the electrical load within the house will be: — 6KW Lighting and 3 Vi Horse Power Air-Conditioning
¼ Horse Power Blowers
1.2 KW Dishwashers
There will be 1-150 AMP — 3 wire socket type electric meter for each house.
Sincerely yours,
POMPEII ESTATES
AT: SWR ALBINO TESTANI—
PRESIDENT
Between the date of this letter (June 12, 1975) and the time service was installed (Oct. 24, 1975) four months elapsed. There was no other correspondence; but the plaintiff’s witness (Testani) testified that he had numerous conversations with Mr. Vebeliunas on the phone and at the job site. Mr. Vebeliunas, defendant’s employee never appeared in court, even though the case was tried on three separate occasions over a period of two weeks. Though Vebeliunas was defendant’s field representative and the only contact plaintiff had with defendant, he was never consulted when the decision was made to discontinue service for the nonpayment of the first two months rent. The testimony of defendant’s witnesses bore out the fact that said decision was a routine procedure activated by the computer and ordered by a Mr. Chris Hagan. Did defendant produce Mr. Hagan to testify what human input there was to the computer’s order? No, like Mr. Vebeliunas, he never graced the courtroom scene. Failure to produce two key witnesses under the defendant’s control can only lead to the inference that they would not contradict the plaintiff’s contention that defendant acted unreasonably (Noce v Kaufman, 2 NY2d 347, 353; Schwier v New York Cent & Hudson Riv. R. R. Co., 90 NY 558).
Negligence is lack of ordinary care. It is a failure to exercise that degree of care which a reasonably prudent person would have exercised under such circumstances (Caldwell v Village of Is. Park, 304 NY 268; Sadowski v Long Is. R. R. Co., 292 NY 448). The statute only requires the notice of discontinuance to *237 be sent to the premises where the service is provided; though, by regulation, the Public Service Commission has said that the customer may direct another address for mailing purposes. While the plaintiffs letter (supra) does not specifically direct that the mail be sent to 34-34 Bell Boulevard, any reasonably prudent person examining the letter would realize that this is a builder building new homes and that it is not customary for a builder to occupy the homes he builds. Certainly, any reasonably prudent person, if in doubt, would contact Mr. Vebeliunas to ascertain the facts. This is especially so when the termination of service is in the middle of winter and the foreseeable consequences to the heating system and the water pipes are apparent. Where there is a foreseeability of damage to another that may occur from one’s acts, there arises a duty to use care, (Palsgraf v Long Is. R. R. Co., 248 NY 339). In this instance, a one-minute cursory glance at plaintiffs letter (supra) would have alerted Mr. Hagan to the fact that there was something unusual in this situation. To the contrary, the computer said, "terminate”, and Mr. Hagan gave the order to terminate.
This court finds the defendant liable to the plaintiff for damages in the amount of $1,030, with interest and costs. While the computer is a useful instrument, it cannot serve as a shield to relieve Consolidated Edison of its obligation to exercise reasonable care when terminating service. The statute gives it the discretionary power to do so, and this discretion must be exercised by a human brain. Computers can only issue mandatory instructions — they are not programmed to exercise discretion.