OPINION OF THE COURT
Herman J. Walz, J.
Plaintiff seeks money damages against defendant utility, alleging that defendant negligently terminated electric service to plaintiff’s property in the middle of winter, causing pipes to freeze and damage to occur. Defendant moves for summary judgment, claiming that there can be no negligence as to plaintiff, since there is no duty owing to plaintiff, and further citing its tariff, which, defendant claims, makes it liable only for acts of gross negligence.
Plaintiff had rented his property to a tenant who was responsible to pay utilities. The tenant vacated the property in December, 1982, and ordered that service be discontinued in his name. On January 8, 1983, electric service was shut off by defendant, without any notice to plaintiff.
It is conceded by defendant that its custom for many years was to continue service in such circumstances even though there was no request for such service by the landlord. It is also conceded that in the spring of 1981 defen *645 dont utility changed its policy and took steps to inform its customers, and the public generally, of the change in policy. Advertisements were purchased in the local newspapers, and a notice of such change in policy was inserted in bills sent to every residential customer in October, 1982.
Although defendant claims that it would be responsible only for its gross negligence by reason of its tariff, the provisions of 16 NYCRR 218.1 make such limitation of liability ineffective. Subdivision (c) of that section requires the elimination from tariffs of “[provisions limiting the liability of the company for any damages resulting from the negligence of the company in connection with the supplying or use of electricity or gas”.
We must, therefore, examine the circumstances to,determine whether defendant in fact had a duty to plaintiff, and, for purposes of this motion, whether there is a factual issue as to the breach of any such duty. The case of Beck v FMC Corp. (53 AD2d 118, affd 42 NY2d 1027) makes it clear that the general rule in this State is that there can be no recovery against the utility for its negligence in furnishing electric service in the absence of a contractual relationship. There are other cases, some arising out of the New York City blackout in 1977, to the same effect. (Nicholson v City of New York, 271 App Div 899, affd 297 NY 548; Kraye v Long Is. Light. Co., 42 AD2d 972; Shubitz v Consolidated Edison Co., 59 Misc 2d 732; Crane v City of New York, NYLJ, Aug. 9, 1982, p 12, col 6; Hernandez v Consolidated Edison Co., NYLJ, Feb. 17, 1983, p 11, col 1.)
Crane involved a fall in the dark on a sidewalk, and Shubitz a fall in the dark in a common hallway of an apartment building. Hernandez, Kraye and Nicholson involved motor vehicle accidents in the dark. In each case the darkness was caused by the failure of the utility to furnish electric power, and in each case the court held that there was no responsibility, since there was no contractual relationship between the plaintiff and the utility.
Perez v New York City Housing Auth. (114 Misc 2d 1055) is to the contrary. However, the court there did not consider Beck (supra) and this court does not-find that case to be controlling.
*646 To the rule that there is no duty by the utility in the absence of a contractual relationship there is an exception, stated by Chief Judge Cardozo, “The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all”. (Moch Co. v Rensselaer Water Co., 247 NY 160, 167.) Chief Judge Cardozo also teaches us in Palsgrafv Long Is. R. R. Co. (248 NY 339, 344), that “[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation”.
These basic principles were applied in Hall v Consolidated Edison Corp. (104 Misc 2d 565), in which a utility was held responsible to persons who were damaged by the intentional shutoff of electric services to someone else. (See, also, Cramer v Niagara Mohawk Power Corp., 45 Misc 2d 670; Pompeii Estates v Consolidated Edison Co., 91 Misc 2d 233.)
Hall (supra) also involved a fall in the dark by a noncustomer tenant in an apartment building. The court found liability against the utility. The court distinguished Beck (supra) and other cases as not involving an affirmative act of negligence by the utility. The court found the duty by the utility to a noncustomer in Chief Judge Cardozo’s phrase quoted above. This same principle articulated by Chief Judge Cardozo.supported a verdict against a municipality and in favor of a citizen when the municipality negligently abandoned police protection after having assumed such task. (Zibbon v Town of Cheektowaga, 51 AD2d 448.)
Closer to the facts in this case are Cramer (supra) and Pompeii Estates (supra) where the cutoff of service caused pipes to freeze and damage to occur. Cramer was decided before Beck (supra) and contains no analysis of the legal grounds for any duty of the utility to a noncustomer. In Pompeii Estates the plaintiff was a customer who did not pay his utility bill. Even in that case the utility had an obligation to perform with due care its statutory right to cut off service for nonpayment.
Here, plaintiff has owned the premises for more than 17 years and owns six other rental properties. Plaintiff claims that on previous occasions over that 17-year period tenants *647 have moved and ordered final readings of utility meters and a shutoff of service. In each instance a final bill was rendered to the tenant, but service was continued until the next tenant arranged for service. It is not clear from the papers before the court how long the utility would continue service in such cases, but there is a clear, factual allegation that the utility previously did not shut off service to this landlord’s property in circumstances identical to this case. It is also clear that landlord claims to have relied on this practice. Landlord argues that had he known of a change in policy by the utility he would have arranged for service in his own name, and expended the modest amount necessary to protect a substantial investment in his real estate.
These are compelling circumstances for the application of the Cardozo rules. Even though in the first instance defendant had no obligation to continue service to these premises in the absence of a contract, having adopted the practice alleged, it can discontinue such practice only with due care. Whether such practice in fact existed toward this plaintiff, and whether the general notice given by defendant in 1981 constituted due care, are questions of fact which must be submitted to the trier of the facts.
The motion for summary judgment is denied.